[No. S073031. June 5, 2000.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF SAN JOAQUIN COUNTY, Respondent;
JOSE FRANCISCO ZAMUDIO, Real Party in Interest.

---

**COUNSEL**

John D. Phillips, District Attorney, Craig H. Holmes and David Wellenbrock, Chief Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Victor S. Haltom, under appointment by the Supreme Court, for Real Party in Interest.

---

**OPINION**

**WERDEGAR, J.**—Defendant and real party in interest Jose Francisco Zamudio was advised, when pleading no contest in 1992 to the felony of unlawful driving or taking of a vehicle without the owner's consent (Veh. Code, § 10851), that conviction of that offense might have the consequences of his being deported or barred from naturalizing to United States citizenship, but he was not advised the conviction might also result in his being excluded from admission to this country (Pen. Code, § 1016.5, subd. (a)).[1] Upon defendant's motion, the trial court permitted him to withdraw his 1992 plea, vacated the judgment of conviction and reset the matter for trial. (*Id.*, subd. (b).) We conclude that the Court of Appeal, which summarily denied the People's petition for writ relief, thereby contravened the legislative intent underlying section 1016.5. Accordingly, we reverse the decision of the Court of Appeal.

### BACKGROUND

On or about August 5, 1992, defendant was arrested and charged with the felony of unlawfully taking or driving a vehicle (Veh. Code, § 10851) and with receiving stolen property (§ 496). Petitioner filed a complaint in the Municipal Court for the County of San Joaquin, Stockton Judicial District (hereafter the 1992 prosecution).

At defendant's arraignment the next day, the court advised him and others who were appearing: "If any of you are not United States citizens and you

---

[1]Undesignated section references are to the Penal Code.

are convicted of a misdemeanor or a felony, it could be used to cause your deportation or to prevent your obtaining United States citizenship."[2] The court did not advise defendant that, in the event he were deported or left the country, a conviction might have the further consequence of excluding him from readmission to the United States.

Approximately two weeks later, at the time set for the preliminary hearing, defendant, pursuant to a negotiated settlement, entered a plea of no contest to the vehicle-taking charge, whereupon the court dismissed the charge of receiving stolen property. During the plea colloquy, defendant expressly gave up various constitutional rights, including his right to trial by jury. As to immigration consequences, the court advised defendant: "If you're not a citizen of the United States, a plea of no contest can result in your deportation or in a refusal of naturalization, citizenship or amnesty at a later point in time." The court again failed to advise defendant that a conviction resulting from his plea might also result in his exclusion from admission to the United States. Defendant was sentenced to serve eight months in county jail and placed on five years' probation.

Just under five years later, in May 1997, defendant was arrested and charged in the same court with taking a vehicle (Veh. Code, § 10851), driving under the influence of alcohol or drugs (Veh. Code, § 23152), and unlawful possession and transportation or sale of a controlled substance (Health & Saf. Code, §§ 11377, 11379) (hereafter the 1997 prosecution). An order to show cause alleging defendant's violation of probation also was filed.

A settlement was negotiated encompassing both files, with defendant admitting a probation violation in the 1992 prosecution and pleading no contest to possession of a controlled substance and driving under the influence (with a prior) in the 1997 prosecution. The court gave defendant various advisements, including some relating to immigration.[3] The court sentenced him to two years in state prison on the probation violation, reducing the sentence with various credits to 90 days' actual time and granting defendant permission to remain in county jail pending his pregnant wife's giving birth. In consideration of defendant's pleading no contest to

---

[2]The record below, consistent with "the intent of the Legislature that at the time of the plea no defendant shall be required to disclose his or her legal status to the court" (§ 1016.5, subd. (d)), does not reveal defendant's precise immigration status. As will appear, however, the record reveals that defendant, on whom federal authorities have placed an immigration hold, is not a citizen of the United States.

[3]The trial court denied defendant's motion to vacate his pleas in the 1997 prosecution, and neither party sought review of that denial. Thus, the adequacy of the advisements delivered in the 1997 prosecution is not before us.

possession and driving under the influence (for which he was sentenced to no additional time and placed on informal probation) the remaining counts were dismissed.

In March 1998, defendant filed a section 1016.5 motion seeking to vacate his plea in the 1992 prosecution, alleging that he had been improperly advised about the possible immigration consequences. In support, defendant submitted his immigration attorney's sworn declaration (hereafter the Yun Declaration) that defendant's cumulative criminal convictions, including his convictions under Vehicle Code section 10851,[4] created the possibility he would suffer adverse immigration consequences.[5]

At the hearing on the motion, the trial court denied petitioner's request to make an offer of proof and for an evidentiary hearing on the questions whether defendant would have pleaded no contest to vehicle taking in 1992 had he been properly advised, and when defendant acquired actual knowledge of the adverse immigration consequences of his plea.

The court also ruled on the validity of a subpoena duces tecum petitioner had served on the public defender for the contents of certain files relating to defendant. Determining that petitioner had a right to receive only that information in the public defender's files relating to the immigration issues raised by defendant's section 1016.5 motion, the court conducted an in camera review of the files to determine if they contained any such information. After conducting its review, the court ruled the files contained "absolutely nothing" relating to this case other than a showing that federal authorities had placed an immigration hold on defendant in connection with the 1997 prosecution, a fact with which, apparently, all present (including counsel for petitioner and defendant) were already familiar.

The trial court granted defendant's section 1016.5 motion, reinstating the original complaint in the 1992 prosecution. Defendant was held to answer, and an information charging him with taking a vehicle and receiving stolen property was filed. Defendant's pleas of not guilty to both charges were taken and the matter set for trial.

---

[4]In addition to the 1992 felony conviction, in 1990 defendant suffered a misdemeanor conviction for violation of Vehicle Code section 10851.

[5]More specifically, the Yun Declaration states: "Mr. Zamudio faces the possibility of adverse immigration consequences as a result of his convictions for violations [of] Health and Safety Code section 11377 and Vehicle Code sections 10851 and 23152. Indeed, he is subject to, inter alia, deportation as a result of (1) the conviction for the narcotics offense, (2) convictions for multiple offenses involving moral turpitude (both the vehicle theft and the narcotics offenses are deemed to be offenses involving moral turpitude for purposes of the immigration law), and/or (3) the conviction for the drunk driving offense, since he has a prior drunk driving conviction."

We granted review when the Court of Appeal summarily denied petitioner's application for writ relief.[6]

## DISCUSSION

Section 1016.5 provides that "[p]rior to acceptance of a plea of guilty or nolo contendere [no contest] to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (§ 1016.5, subd. (a).)

The statute also specifies a remedy for a trial court's failure to administer the mandated advisements. "If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." (§ 1016.5, subd. (b).)

"Absent a record that the court provided the advisement required" by section 1016.5, subdivision (a), the defendant is "presumed not to have received" it. (*Id.*, subd. (b).) In this case, however, no presumption is necessary. Defendant and petitioner agree that, both at the arraignment and at the time of plea in the 1992 prosecution, the trial court expressly advised defendant about possible consequences leading to deportation or affecting naturalization to citizenship, but did *not* advise him about the possible consequence of "exclusion from admission to the United States" (§ 1016.5, subd. (a)), as also required by the statute.

---

[6]Almost a year after we granted review, defendant filed a "Motion to Dismiss," suggesting that, as petitioner could have appealed the trial court's order vacating the judgment of conviction, writ review is not available. Even were defendant technically correct that petitioner may be denied writ relief on appealability grounds, he would have articulated at best an argument supporting the result he actually obtained in the Court of Appeal, not an argument suggesting we improvidently granted review of that decision. We granted review because it appeared "necessary to secure uniformity of decision or the settlement of important questions of law" (Cal. Rules of Court, rule 29(a)), and nothing in defendant's dismissal motion undermines that determination. Accordingly, defendant's motion to dismiss is denied.

### A. The Trial Court's Section 1016.5 Ruling

As noted, the trial court granted defendant's section 1016.5 motion, vacating his 1992 conviction for taking a vehicle. Quoting *People v. Gontiz* (1997) 58 Cal.App.4th 1309, 1316 [68 Cal.Rptr.2d 786], the court observed: " 'The statute requires the court to warn the defendant expressly of each of the three distinct possible immigration consequences of his conviction[] prior to his plea.' I only advised him of two."

According to petitioner, the trial court committed several errors in granting defendant's section 1016.5 motion. We consider each of petitioner's contentions in turn, reviewing the trial court's ruling for abuse of discretion. (*People v. Shaw* (1998) 64 Cal.App.4th 492, 495-496 [74 Cal.Rptr.2d 915]; see also § 1016.5, subd. (c).)

### 1. Prejudice requirement

■ Petitioner first contends the trial court erred in granting defendant relief under section 1016.5 without requiring him to demonstrate he was prejudiced by the incomplete advisement he received at the time of his 1992 plea. Petitioner contends that, in order to prevail on his section 1016.5 motion, defendant must show not only that the trial court failed, at the time of that plea, to advise him as provided by the statute and that there exists, at the time of the motion, more than a remote possibility that his conviction will have one or more of the specified adverse immigration consequences (§ 1016.5, subd. (b)), but also that, properly advised, he would not have pleaded no contest in the first place. For the following reasons, we agree.

### a. Statutory language

■ Initially, "[a]s in any case of statutory interpretation, our task is to determine afresh the intent of the Legislature by construing in context the language of the statute." (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873].) In determining such intent, we begin with the language of the statute itself. (*Rojo v. Kliger* (1990) 52 Cal.3d 65, 73 [276 Cal.Rptr. 130, 801 P.2d 373].) That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning. (*City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 90 [260 Cal.Rptr. 520, 776 P.2d 222].) "If there is no ambiguity in the language of the statute, 'then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs.' " (*Lennane v. Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) "But when the statutory language is ambiguous, 'the court may examine the context in

which the language appears, adopting the construction that best harmonizes the statute internally and with related statutes.' " (*Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 724 [80 Cal.Rptr.2d 506, 968 P.2d 65].)

In construing a statute, we must also consider " 'the object to be achieved and the evil to be prevented by the legislation.' " (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927].) And, wherever possible, "we will interpret a statute as consistent with applicable constitutional provisions, seeking to harmonize Constitution and statute." (*California Housing Finance Agency v. Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193], citing numerous authorities.)

By its terms, section 1016.5 applies whenever, "after January 1, 1978, the court fails to advise the defendant as required" and "the defendant shows that conviction of the offense . . . may have the consequences" specified therein. (§ 1016.5, subd. (b).) In such circumstances, section 1016.5 provides that, "on defendant's motion," the court "shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." (*Id.*, subd. (b).)

Section 1016.5 contains an express statement of the legislative intent underlying the statute. (§ 1016.5, subd. (d).) The Legislature was concerned about the "many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime" in which "a plea of guilty or nolo contendere is entered without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (*Ibid.*) "Therefore," the Legislature declared, section 1016.5 was enacted "to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea." (*Id.*, subd. (d).)[7] Partly on the basis of section 1016.5, subdivision (d), some Courts of Appeal have expressly or impliedly engrafted onto section 1016.5 prejudice

---

[7]Section 1016.5, subdivision (d) provides, in its entirety: "The Legislature finds and declares that in many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty or nolo contendere is entered without the defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the Legislature in enacting this section to promote fairness to such accused individuals by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be preceded by an appropriate warning of the special consequences for such a defendant which may result from the plea. It is also the intent of the Legislature that the court in such cases shall grant the defendant a reasonable amount of time to negotiate with the prosecuting agency in the event

or diligence requirements—most commonly that the defendant was, in fact, ignorant of potential adverse immigration consequences, or that he would not have pleaded guilty had proper advisements been given. (See, e.g., *People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1617-1622 [44 Cal.Rptr.2d 666]; *People v. Murillo* (1995) 39 Cal.App.4th 1298, 1305 [46 Cal.Rptr.2d 403]; *People v. Aguilera* (1984) 162 Cal.App.3d 128, 130-132 [208 Cal.Rptr. 418].)

Defendant suggests that the Legislature's use of "shall vacate the judgment" in section 1016.5, subdivision (b) renders the statute a per se rule of reversal, incompatible with a construction that requires defendants to demonstrate prejudice. We disagree. While "the word 'shall' in a statute is ordinarily deemed mandatory, and 'may' permissive" (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1143 [43 Cal.Rptr.2d 693, 899 P.2d 79]), "a court may consider the consequences that would follow from a particular construction and will not readily imply an unreasonable legislative purpose" (*id.* at p. 1147). We conclude that defendant's proffered construction does not accord with the legislative purpose underlying section 1016.5.

Defendant correctly observes that section 1016.5, subdivision (b) expressly details only one proof requirement relating to the consequences of a court's failure to give the advisements required by section 1016.5, subdivision (a), i.e., that the defendant show that conviction of the offense to which he pleaded guilty or nolo contendere actually "may have" one or more of the specified adverse immigration consequences. On the other hand, section 1016.5 contains no express reference to prejudice and thus is silent on the question whether such a requirement may be inferred.

Fortunately, " 'we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " (*Horwich v. Superior Court, supra*, 21 Cal.4th at p. 276.) Accordingly, in construing section 1016.5 with respect to prejudice, we may be guided by other provisions in the criminal law relating to that topic. (See, e.g., Cal. Const., art. VI, § 13 (hereafter article VI, section 13); Pen. Code, § 1404.)

b.  *Article VI, section 13*

Article VI, section 13 provides, in its entirety: "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the

the defendant or the defendant's counsel was unaware of the possibility of deportation, exclusion from admission to the United States, or denial of naturalization as a result of conviction. It is further the intent of the Legislature that at the time of the plea no defendant shall be required to disclose his or her legal status to the court."

jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

In seeking review, petitioner suggested that the trial court, in granting defendant's section 1016.5 motion, had permitted the "vacating of a judgment where there was no injustice," implicating article VI, section 13. Petitioner points out that failure to advise a defendant in compliance with section 1016.5 is not one of the few errors that have been found so fundamental as to be reversible per se despite article VI, section 13. Petitioner argues we must prefer a construction requiring section 1016.5 movants to demonstrate prejudice because a contrary construction would call into question the statute's constitutionality. (See *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1] [court will not "reach out and unnecessarily pronounce upon the constitutionality of any duly enacted statute"].)

Defendant contends petitioner is precluded from relying on article VI, section 13 for the first time on appeal, not having invoked that constitutional provision in the trial court. Petitioner acknowledges having explicitly invoked article VI, section 13 for the first time in the Court of Appeal, but argues the invocation was not a change in legal theory, but rather, mere elucidation of one aspect of its trial court theory that section 1016.5 is subject to equitable defenses.

We need not determine whether petitioner's first express references to article VI, section 13 in fact echo earlier themes. Defendant's own authority on the "theory of trial" doctrine notes its application is "discretionary with the reviewing court" and, in any event, subject to an exception for appellate reliance on a new theory "where the issue is one of law alone." (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 406, p. 457; see also *id.*, § 407, p. 459.) The exception applies here, as petitioner's theory indeed raises a purely legal issue, i.e., whether our construing section 1016.5 not to require a demonstration of prejudice might implicate article VI, section 13.

Substantively, defendant argues article VI, section 13 does not apply to a vacation of judgment under section 1016.5. As defendant points out, we long have recognized that "[t]he amendment by which [former article VI, section 4½, predecessor to article VI, section 13] was added to the constitution was not 'designed to repeal or abrogate the guarantees accorded persons accused of crime by other parts of the same constitution, or to overthrow all statutory

rules of procedure and evidence in criminal cases.' " (*People v. Hall* (1926) 199 Cal. 451, 458 [249 P. 859], quoting *People v. O'Bryan* (1913) 165 Cal. 55, 65, 66 [130 P. 1042] [holding "final test" of "miscarriage of justice" is "the opinion of the appellate court upon the result of the error," not whether error is constitutional].) From the first, defendant notes, in considering article VI, section 13 (and former art. VI, § 4½) we have recognized "[i]t is an essential part of justice that the question of guilt or innocence shall be determined by an orderly legal procedure, in which the substantial rights belonging to defendants shall be respected." (*People v. O'Bryan, supra,* at p. 65.) The court's error in misadvising him, defendant argues, so compromised his substantial right to make an informed plea that it cannot be considered merely "error as to any matter of procedure" within the meaning of the constitutional provision.

Petitioner concedes that article VI, section 13 does not encompass misadvisement under section 1016.5 as a "misdirection of the jury," an "improper admission or rejection of evidence" or an "error as to any matter of pleading." Petitioner insists, however, that article VI, section 13 *does* encompass a trial court's failure to deliver full section 1016.5 advisements as an "error as to any matter of procedure" because the law regards as procedural all " 'those legal rules which direct the course of proceedings' " (*People v. Williamson* (1933) 134 Cal.App. 775, 781 [26 P.2d 681]) without conferring substantive rights.

No court previously has considered whether a criminal defendant's right under section 1016.5 to receive from the court specified immigration advisements on the record is a "matter of procedure," error in the implementation of which is subject to article VI, section 13. Our previous pronouncements in an analogous situation, however, provide useful guidance. ■ We repeatedly have referred to the judicially declared rule compelling advisement of the direct consequences of a guilty plea as one of "criminal procedure." (*People v. Walker* (1991) 54 Cal.3d 1013, 1022 [1 Cal.Rptr.2d 902, 819 P.2d 861]; accord, *People v. Barella* (1999) 20 Cal.4th 261, 266 [84 Cal.Rptr.2d 248, 975 P.2d 37]; *People v. Wright* (1987) 43 Cal.3d 487, 495 [233 Cal.Rptr. 69, 729 P.2d 260].) Moreover, we have relied on article VI, section 13 in holding that "[a] trial court's failure to comply with this judicial rule of criminal procedure requires reversal only if it is reasonably probable a result more favorable to the defendant would have been reached if he had been properly advised." (*People v. Wright, supra,* at p. 495, fn. omitted.)

As noted, *People v. Williamson,* cited by both parties, calls procedural " 'those legal rules which direct the course of proceedings to bring parties into court, and the course of the court after they are brought in.' " (*People v.*

*Williamson, supra,* 134 Cal.App. at pp. 781-782, quoting *Kring v. Missouri* (1882) 107 U.S. 221 [2 S.Ct. 443, 27 L.Ed. 506].) ▆ On its face, section 1016.5's requirement that courts "administer [specified immigration advisements] on the record to the defendant" (§ 1016.5, subd. (a)) before accepting a guilty or nolo contendere plea would seem to be such a rule.

Of course, the precise legal rule at issue—that criminal defendants preparing to plead guilty or no contest be given specified immigration advisements—is not primarily of judicial origin. Section 1016.5 confers important rights our Legislature accorded in "fairness to . . . accused individuals" (§ 1016.5, subd. (d)). But section 1016.5 rights are not substantive in the sense of flowing from " 'the prerogative of the legislature to declare what . . . acts shall be unlawful' " (*Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1093, fn. 6 [4 Cal.Rptr.2d 874, 824 P.2d 680], overruled on another point in *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 80, fn. 6 [78 Cal.Rptr.2d 16, 960 P.2d 1046]). With all appropriate deference, we cannot derive, merely from the Legislature's reference to "fairness" in section 1016.5, subdivision (d), an intent that the procedural safeguards mandated thereby be regarded as "essential element[s] of a fair trial or due process" (*People v. Sarazzawski* (1945) 27 Cal.2d 7, 11 [161 P.2d 934]) so as to insulate any error in providing them from analysis, under article VI, section 13, as "error as to any matter of procedure."

Furthermore, we are not·persuaded that defendant's rights under section 1016.5 are, by their nature, so important as to constitute an "essential part of justice" (*People v. O'Bryan, supra,* 165 Cal. at p. 65), any deprivation of which must be regarded as a miscarriage. Nor do we believe a trial court's failure to deliver complete section 1016.5 advisements ranks among "the kinds of errors that, regardless of the evidence, may result in a 'miscarriage of justice' because they operate to deny a criminal defendant . . . a fair trial" (*People v. Cahill* (1993) 5 Cal.4th 478, 501 [20 Cal.Rptr.2d 582, 853 P.2d 1037]) as does, "for example, the denial of the defendant's right to a jury trial or to an impartial trial judge" (*ibid.*). (See also *People v. Succop* (1967) 67 Cal.2d 785, 789-790 [63 Cal.Rptr. 569, 433 P.2d 473] [denial of hearing on temporary commitment constituted deprivation of substantial right]; *People v. Sarazzawski, supra,* 27 Cal.2d at p. 18 [same re denial of reasonable opportunity to present new trial motion]; see generally 6 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Reversible Error, §§ 3303-3311, pp. 4084-4095 [discussing types of errors held per se reversible notwithstanding art. VI, § 13].)

Defendant relies heavily on *People v. Gontiz, supra,* 58 Cal.App.4th 1309 (*Gontiz*), which held that section 1016.5 does not require a defendant moving

for relief thereunder to show prejudice, beyond that his conviction actually may have adverse immigration consequences. (*Gontiz, supra,* at p. 1317.) The *Gontiz* court, noting that section 1016.5, subdivision (b) contains no express reference to prejudice, opined the statute provides for mandatory vacation of judgment where a trial court fails to give the specified advisements, "limited only by the requirement that the movant be in danger of suffering those consequences." (*Gontiz, supra,* at p. 1311.)

As far as it goes, we do not find the reasoning of *Gontiz* entirely unpersuasive. But *Gontiz* did not consider whether section 1016.5 should be construed in order to avoid state constitutional infirmities, and "cases are not authority for propositions not considered." (*People v. Gilbert* (1969) 1 Cal.3d 475, 482, fn. 7 [82 Cal.Rptr. 724, 462 P.2d 580].) Obviously, the principle of construction invoked by the *Gontiz* court—that a criminal statute's "ambiguity must be resolved in favor of the defendant" (*Gontiz, supra,* 58 Cal.App.4th at p. 1318)—cannot take precedence over paramount constitutional considerations.

Ultimately, we need not decide whether defendant's state statutory right to receive specified immigration advisements is "constitutionally qualified by the duty of California appellate courts to examine 'the entire cause' when any ['error as to any matter of procedure'] is alleged and to affirm the judgment absent a 'miscarriage of justice'" (*People v. Wims* (1995) 10 Cal.4th 293, 310 [41 Cal.Rptr.2d 241, 895 P.2d 77] [bracketed text quoting art. VI, § 13 added]), as defendant fails to adduce any authority suggesting the Legislature, when enacting section 1016.5, intended to depart from the normal rules, consonant with that constitutional provision, governing withdrawal of a plea for misadvisement regarding collateral consequences. Defendant does not dispute that immigration consequences, generally, are considered "collateral" consequences of a criminal conviction. (*Gontiz, supra,* 58 Cal.App.4th at p. 1311; see also *People v. Limones* (1991) 233 Cal.App.3d 338, 344 [284 Cal.Rptr. 418].) As defendant's own authority acknowledges, "[n]ormally a motion to vacate a plea based on misadvisement or omission of a collateral consequence requires the defendant to demonstrate that he would not have entered into the plea had he known of the consequence." (*Gontiz, supra,* at p. 1311, citing *People v. Walker, supra,* 54 Cal.3d at pp. 1022-1023.) We see no indication that the Legislature intended section 1016.5 to operate as an exception.

c. *Section 1404*

██ ██ On the other hand, for the entire period of section 1016.5's existence (and before), the Legislature has provided that no mistake or error

in a proceeding mandated by the Penal Code renders the proceeding invalid, absent prejudice to the defendant's substantial rights. (§ 1404.) Thus, section 1404 provides that: "Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

Enacted in its present form by the Legislature in 1872, section 1404 is derived from a provision that entered the code in 1851. (Stats. 1851, ch. 29, § 601, p. 279.) We long have held that section 1404 constitutes a legislative command that courts disregard technical errors in procedure unless they impact the substantial rights of defendants. (See, e.g., *People v. Howard* (1992) 1 Cal.4th 1132, 1164-1165 [5 Cal.Rptr.2d 268, 824 P.2d 1315] [omissions in stenographic record]; *In re Etie* (1946) 27 Cal.2d 753, 757 [167 P.2d 203] [failure of parole revocation order to specify ground]; *People v. Durrant* (1897) 116 Cal. 179, 198 [48 P. 75] [peremptory challenge of juror].) Most recently, we cited section 1404 in concluding that a trial court's use of an inaccurately worded form for the jury to record its finding on a prior felony conviction allegation created no prejudicial defect in the finding. (*People v. Bolin* (1998) 18 Cal.4th 297, 330-331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

We do not presume that the Legislature intends, when it enacts a statute, to overthrow long-established principles of law unless such intention is clearly expressed or necessarily implied. (*Theodor v. Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234].) Rather, we must assume that, when enacting section 1016.5, the Legislature was aware of existing related laws and intended to maintain a consistent body of rules. (*Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) There is no indication the Legislature enacted section 1016.5 in denigration of, or as an exception to, section 1404's general proviso that only those procedural errors that prejudice the defendant's substantial rights render the criminal proceeding invalid. Moreover, to afford relief for incomplete advisement under section 1016.5 only to defendants who demonstrate they were prejudiced thereby accords with the Legislature's expressly stated purpose of addressing "instances" in which pleas are entered "without the defendant knowing" the immigration consequences. (§ 1016.5, subd. (d).)

For the foregoing reasons, and in order to avoid whatever constitutional infirmity a contrary construction might engender, we have no difficulty construing section 1016.5 to require that defendants, in order to obtain relief under subdivision (b) of the statute, demonstrate they were prejudiced by any failure of the court to provide complete advisements under subdivision

(a). Accordingly, when ruling on defendant's section 1016.5 motion, the trial court in this case erred in failing to consider, not only whether it formerly had failed to advise defendant as section 1016.5 requires and whether, as a consequence of his conviction on the offense to which he pleaded nolo contendere, defendant actually faces one or more of the statutorily specified immigration consequences, but also whether defendant was prejudiced by the court's having provided incomplete advisements.[8]

Although the order of the trial court must therefore be reversed, for the guidance of the trial court on remand we turn now to discussion of petitioner's other claims of error.

### 2. *Evidentiary hearing*

In granting defendant's motion, the trial court impliedly found that defendant had shown that conviction of the offense to which he pleaded nolo contendere "may have the consequences for [him] of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States" (§ 1016.5, subd. (b)). (*Watts v. Crawford* (1995) 10 Cal.4th 743, 762, fn. 15 [42 Cal.Rptr.2d 81, 896 P.2d 807].) Petitioner contends that, at the hearing on the motion, the court improperly denied its request for a further evidentiary hearing on whether defendant faces such consequences and, if so, when defendant acquired knowledge that he faces them.

Neither in its written opposition nor at the hearing on the motion did petitioner dispute that defendant, in fact, faces potential adverse immigration consequences.[9] Moreover, it was petitioner who drew the court's attention to the fact the 1997 probation report on this case stated defendant "would be deported." Nevertheless, petitioner now contends the court should have permitted live testimony and cross-examination on whether and when defendant faced, and knew he faced, immigration risks.

Petitioner's argument necessarily is premised on the belief that the showing required of defendant under section 1016.5, subdivision (b) is a factual one. While defendant made a factual showing in the trial court, he took the position that his no contest plea subjected him, as a matter of law, to potential adverse immigration consequences and that, therefore, by citing

---

[8]To the extent *People v. Gontiz, supra,* 58 Cal.App.4th 1309, *People v. Guzman* (1981) 116 Cal.App.3d 186 [172 Cal.Rptr. 34], and *People v. Borja* (1981) 125 Cal.App.3d 758 [178 Cal.Rptr. 287] are inconsistent with this conclusion, they are disapproved.

[9]Petitioner asserted the Yun Declaration was vague and conclusory, but not by way of disputing Attorney Yun's conclusion that defendant faces potential adverse immigration consequences. Petitioner argued, rather, that defendant was dilatory in filing his motion.

to the record of his plea and relevant immigration laws, he had carried his proof burdens under section 1016.5. (See 8 U.S.C. § 1182(a)(2)(B); *id.*, § 1182(a)(2)(A)(i)(I); see generally Kurzban's Immigration Law Sourcebook (Am. Immig. L. Found., 6th ed. 1998) pp. 52-53, 56.)[10]

■ Even assuming petitioner is correct that a factual showing is required, we are not persuaded the trial court abused its discretion in denying a further evidentiary hearing and ruling on the basis of the record before it, which included the parties' written submissions. "There is simply no authority for the proposition that a trial court necessarily abuses its discretion, in a motion proceeding, by resolving evidentiary conflicts without hearing live testimony." (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 414 [58 Cal.Rptr.2d 875, 926 P.2d 1061].)

Petitioner cites no authority specifically requiring courts to hold live evidentiary hearings on section 1016.5 motions or, more generally, on plea withdrawal motions. On the other hand, California law affords numerous examples of a trial court's authority, in ruling upon motions, to resolve evidentiary disputes without resorting to live testimony. (See, e.g., § 1050, subd. (b) [affidavits or declarations sufficient to support motion for continuance]; *People v. Cox* (1991) 53 Cal.3d 618, 697 [280 Cal.Rptr. 692, 809 P.2d 351] [whether to conduct live hearing on new trial motion alleging juror misconduct is within court's discretion]; *Garcia v. Superior Court* (1984) 156 Cal.App.3d 670, 681-682 [203 Cal.Rptr. 290] [evidentiary hearing on motion to disqualify trial judge not required]; *People v. Eastman* (1944) 67 Cal.App.2d 357, 359 [154 P.2d 37] [implying court properly could rule on motion to vacate judgment of conviction on affidavits only].)

For the foregoing reasons, we decline to burden trial courts with a requirement that they conduct live evidentiary hearings on all section 1016.5 motions. The trial court did not err in this regard.

### 3. *Showing conviction "may have" specified consequences*

Petitioner next contends that, to the extent it is based on the Yun Declaration, the trial court's implied factual finding that defendant actually faces adverse immigration consequences from his 1992 plea is insufficiently supported. Petitioner asserts the Yun Declaration is "nearly entirely conclusory and devoid of facts." Citing *People v. Williams* (1973) 30 Cal.App.3d

---

[10]Federal immigration law in 1992 provided that "[a]ny alien who at any time after entry is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." (Former 8 U.S.C.A. § 1251(a)(2)(A)(ii) (Westlaw Historical U.S.C.A. 1992); cf. 8 U.S.C. § 1227(a)(2)(A)(ii) [current].)

502, 510 [106 Cal.Rptr. 324], petitioner argues the Yun Declaration is not competent evidence because it is inadmissible hearsay.

Section 1016.5 itself is silent about what constitutes a sufficient showing under its subdivision (b). The only decisions directly to address the question simply recognize that, while section 1016.5, subdivision (b) "implies the need to show more than just a remote possibility of deportation, exclusion, or denial of naturalization" (*People v. Shaw, supra,* 64 Cal.App.4th at p. 499), " 'where there is a sufficient showing on the record from the words of the court itself' " (*ibid.,* quoting *People v. Guzman, supra,* 116 Cal.App. at p. 192), the defendant must be given an opportunity to withdraw his plea.

*People v. Williams, supra,* 30 Cal.App.3d 502, upon which petitioner relies in attacking the Yun Declaration, is not apposite. In *Williams,* involving a hearing on a motion to dismiss criminal charges for dilatory prosecution, the Court of Appeal upheld a trial court's refusal to accept into evidence the defendant's declaration under penalty of perjury about his place of residence, noting the defendant had refused to take the stand and be subjected to cross-examination. (*Id.* at p. 510.) In *Williams,* it was the *defendant* who refused to answer material questions on cross-examination; accordingly, the trial court could properly exclude his sworn affidavit on his own behalf. Here, by contrast, the declaration is not that of a party who refused to answer questions at trial, but that of merely a witness (Attorney Yun) whose evidence relevant to a motion was taken by affidavit. (Accord, *State v. Brown* (Mo. 1977) 549 S.W.2d 336, 344.)

■ Ultimately, we need not pass on the admissibility of the Yun Declaration because the record before the trial court contained more than sufficient support, apart from that declaration, for the court's implied finding that defendant's conviction based on his 1992 plea might, as of the time the court was considering defendant's motion, actually have the consequences for him of deportation, exclusion from admission to the United States, or denial of naturalization (§ 1016.5, subd. (b)).

As discussed, both in its written opposition to defendant's motion and at the hearing, petitioner impliedly conceded defendant faced "immigration problems." The trial court, moreover, possessed the record of defendant's criminal history, including his 1997 conviction, which, as a matter of law, in combination with his earlier convictions, put defendant at risk of adverse immigration consequences, including exclusion from admission to the United States for having committed crimes of moral turpitude. (8 U.S.C. § 1182(a)(2)(B); *id.,* § 1182(a)(2)(A)(i)(I); see *Matter of Serna* (1992) 20 I. & N. Dec. 579 [1992 WL 301779]; *Matter of M.* (1948) 3 I. & N. Dec. 272

[1948 WL 6270].) The record also reveals that the trial court possessed documentary evidence that a border patrol hold had been placed on defendant by federal immigration authorities.

We conclude that defendant, in moving to vacate his 1992 conviction under section 1016.5, showed that, at the time of the motion, he faced "more than just a remote possibility of deportation, exclusion, or denial of naturalization" (*People v. Shaw, supra,* 64 Cal.App.4th at p. 499). Therefore, the trial court's implied finding that "conviction of the offense to which defendant pleaded . . . nolo contendere may have the consequences for the defendant" specified in the statute (§ 1016.5, subd. (b)) was adequately supported.

### 4. *Diligence*

Petitioner next contends the trial court should have denied defendant's section 1016.5 motion on the ground he delayed, without excuse, in bringing it. As petitioner has emphasized, however, no record evidence pinpoints when defendant first knew that he risked actual "exclusion from admission to the United States" (§ 1016.5, subd. (b)). Defendant takes the position that precisely when he acquired such knowledge is irrelevant under the statute.

█  Pursuant to a judicially declared rule of criminal procedure, a defendant's right to complain he was not advised of the collateral consequences of a guilty plea is waived absent a timely objection. (*People v. Walker, supra,* 54 Cal.3d at pp. 1022, 1023.) More specifically, "when the only error is a failure to advise of the [collateral] consequences of the plea, the error is waived if not raised at or before sentencing." (*Id.* at p. 1023.) As we recognized in *In re Moser* (1993) 6 Cal.4th 342 [24 Cal.Rptr.2d 723, 862 P.2d 723], however, that procedural bar does not apply where the defendant has no reason to question the accuracy of the trial court's advisement. (*Id.* at pp. 352-353, fn. 8.)

█  We are not persuaded the trial court was required to deny defendant's section 1016.5 motion as untimely. The trial court sentenced defendant on his 1992 vehicle-taking conviction at the same hearing (indeed, in almost the same breath) at which it delivered the defective plea advisements. Thus, unlike *Walker* and as in *Moser,* this case "does not involve a trial court's imposition at the sentencing hearing of a sentence at variance with the advice given at the earlier plea proceeding"; it is not, therefore, "a situation in which a defendant reasonably may be required to bring the discrepancy to the court's attention by a timely objection at the sentencing hearing." (*In re Moser, supra,* 6 Cal.4th at p. 352, fn. 8.)

The authority petitioner cites, *People v. Castaneda, supra,* 37 Cal.App.4th 1612, stands at most for the proposition that a postjudgment motion to

change a plea must be made with "reasonable diligence" (*id.* at p. 1619). Absent evidence that defendant long ago had cause to question the accuracy of the trial court's 1992 immigration advisements, to hold he should have objected to them earlier would be unfair. This conclusion accords with the plain language of section 1016.5, which contains no time bar.

To the extent petitioner relies on the affirmative defense of laches or its equivalent, the burden is petitioner's to prove the facts comprising that defense. (Evid. Code, § 500; see also *Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 624 [166 Cal.Rptr. 826, 614 P.2d 258].) Petitioner states there is "no indication as to when defendant became aware of possible immigration problems," suggesting only that "presumably he knew in 1990" because he received some immigration advisements that year, in another case. We see no significance for present purposes in defendant's having received some immigration advisements in 1990. The mandated advisement refers to "the offense for which you have been charged" (§ 1016.5, subd. (a)) and no other. Defendant cannot in 1990 have been advised—adequately or otherwise—about the possible consequences of a no contest plea he would enter in 1992 to criminal charges brought against him that same year.

Petitioner notes also that defendant, when pleading in 1992, was advised about some of the adverse immigration consequences his plea might have, specifically, that his conviction "could be used" to cause his deportation or prevent his obtaining United States citizenship. But advising a defendant that a no contest plea may in the abstract have immigration consequences, cannot be taken as placing him on notice that, owing to his particular circumstances, he faces an actual risk of suffering such. Were it so, the *second* of section 1016.5, subdivision (b)'s express required showings, i.e., that the conviction "may have the consequences" specified, would be superfluous. Put another way, that relief under section 1016.5 is predicated upon a defendant's demonstrating his conviction "may have" one or more of the specified consequences implies that such a motion is timely if brought within a reasonable time after the conviction actually "may have" such consequences.

As petitioner points out, the record indicates defendant was concerned that adverse immigration consequences might follow his 1997 conviction. Defendant's concern then was well founded, as in 1997 he stood convicted of multiple criminal offenses, including a drug offense, and, as a consequence, was at risk both for deportation (see 8 U.S.C. § 1227(a)(2)(A)(ii)) and exclusion from readmission (see *id.*, § 1182(a)(2)(A)(i)). (Indeed, as the trial court noted, the public defender's files on the 1997 case indicate federal authorities had placed an immigration hold on defendant.)

A similar level of concern on defendant's part in the period following the 1992 prosecution would not have been as well founded. Deportation can be

instituted only "upon the order of the Attorney General" (8 U.S.C. § 1227(a)) of the United States, who retains discretion not to institute such proceedings. (See *United States v. Santelises* (2d Cir. 1973) 476 F.2d 787, 790, citing prior statute.) The trial court's examination of the public defender's files in the 1992 case revealed no immigration hold or other relevant federal activity such as was found in the 1997 files.

Moreover, the record reveals that in 1992 defendant stood convicted, cumulatively, of at most one misdemeanor violation of Vehicle Code section 10851 (in 1990)[11] and one felony violation of the same statute (in 1992), receiving for the latter a sentence of five years' probation and eight months in jail. While it is possible defendant was at that point technically subject to deportation or exclusion for being "convicted of two or more crimes involving moral turpitude" (former 8 U.S.C.A. § 1251(a)(2)(A)(ii) (Westlaw Historical U.S.C.A. 1992) [deportation]; see also 8 U.S.C.A. § 1182(a)(2)(A)(i)(I) [inadmissibility or exclusion]), that in 1992 defendant faced more than a remote possibility of adverse immigration consequences seems unlikely.

First, it is doubtful federal authorities would have regarded defendant's 1990 plea to misdemeanor vehicle-taking as involving a crime of moral turpitude for immigration purposes.[12] Then, as now, Vehicle Code section 10851 could be violated by taking a vehicle "with intent either to permanently *or* temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle." (Veh. Code, § 10851, subd. (a), italics added.) Thus, "on its face Vehicle Code section 10851 can be violated either by taking a vehicle with the intent to steal it or by driving it with the intent only to temporarily deprive its owner of possession (i.e., joyriding)." (*People v. Allen* (1999) 21 Cal.4th 846, 851 [89 Cal.Rptr.2d 279, 984 P.2d 486].) Accordingly, "[a]

---

[11]The record contains a "Guilty Plea Waiver Form (Misdemeanor)" signed by defendant, recording his no contest plea in April 1990 to a misdemeanor charge of violating Vehicle Code section 10851. The waiver form includes a paragraph, initialed by defendant, which states that the resulting conviction "could result in deportation or exclusion from admission to this country or denial of naturalization or amnesty." The adequacy of these advisements was not challenged below and is not before us. Defendant's 1990 conviction is relevant, however, insofar as the immigration risks defendant actually faced at any given time depended on his cumulative criminal record at that time.

[12]In immigration law, whether a crime is one of moral turpitude does not depend on its classification as a felony or a misdemeanor, or on the severity of the punishment allowable or actually imposed. "The [immigration] courts and the [Board of Immigration Appeals] frequently cite the definition given in *Bouvier's Law Dictionary* (3rd Ed. 1914) as 'an act of baseness, vileness or depravity in the private and social duties which a man owes to his fellow men, or to society in general, contrary to the accepted and customary rule of right and duty between man and man.' " (Brady et al., Cal. Criminal Law and Immigration (Immigrant Legal Resource Center, San Francisco, 1999) § 4.8, p. 4-19.)

conviction under such statute ha[d] been found insufficient to establish theft for purposes of the [Immigration and Nationality Act, 8 U.S.C. § 1101 et seq.]." (Brady et al., Cal. Criminal Law and Immigration, *supra*, § 4.8, p. 4-21, citing *Matter of T.*, (1944) 2 I. & N. Dec. 22 [1944 WL 5154]; *Matter of M.*, (1946) 2 I. & N. Dec. 686 [1946 WL 6077]; see also Brady et al., Cal. Criminal Law and Immigration, *supra*, at § 4.10, p. 4-24.)

Second, even assuming federal immigration authorities would have regarded defendant's 1992 plea to felony vehicle-taking as involving a crime of moral turpitude, the conviction on the plea would not have constituted grounds for deportation, as defendant's actual confinement thereon, eight months, was so short. (See generally Kurzban's Immigration Law Sourcebook, *supra*, at p. 110.)

Most significantly, even if defendant was, in 1992, subject to deportation, he would not necessarily also have been subject to exclusion from readmission. (See 8 U.S.C. (supp. IV, 1993) § 1182(a)(2)(A)(ii); *id.*, § 1182(a)(2)(B).)

In sum, as petitioner pointed out in the trial court, from the perspective of immigration consequences, defendant's criminal record was worse in 1997 than it was in 1992 and, therefore, more likely to engender adverse immigration consequences. Moreover, under the immigration law as it existed in earlier years, greater remedies would have been available to defendant in 1992 than were available in 1997. For example, even if it were found to entail moral turpitude, defendant's misdemeanor vehicle-taking conviction (based on the 1990 plea) might have been subject to a judicial recommendation-against-deportation order (signed before Nov. 29, 1990), which would have required federal authorities to withhold immigration penalties based on that conviction. And if defendant had been placed in deportation proceedings prior to April 1, 1997, he might have qualified for a waiver applicable to criminal deportation grounds that Congress that year greatly narrowed. (See Brady et al., Cal. Criminal Law and Immigration, *supra*, § 4.7, pp. 4-16 to 4-17; *id.*, § 11.10, pp. 11-38 to 11-39.) By 1997, the immigration laws, generally, had become much more severe. (See, e.g., Holding, *Heavy-Handed INS Agents, Legal immigrants are being arrested for minor crimes*, S.F. Chronicle (Sept. 19, 1999) p. 2; Kravets, *Challenge to Pleas Entailing Deportation*, S.F. Daily J. (Mar. 6, 2000) p. 1 [under stricter retroactive 1996 immigration law, even misadvised criminal aliens who have completed sentences often move to vacate pleas because of unforeseeable immigration consequences].)

In view of his family's presence here (and the United States citizenship status of any of his children born in this country), defendant understandably

may have viewed exclusion, about which he was *not* advised, rather than deportation or denial of naturalization, as the most serious for him among section 1016.5's specified immigration consequences; indeed, perhaps as the only one that could affect his calculations regarding the advisability of pleading no contest to the 1992 vehicle-taking charges. Defendant was warned about deportation, but, as noted, deportation does not necessarily preclude legal reentry. And, partly because he was not accurately advised in 1992, defendant reasonably may not have been aware, until the immigration hold revealed in the 1997 case file, that one consequence of the 1992 conviction could be to place him at risk, especially if other convictions followed, of being excluded from readmission.

Shortly after he was convicted in the 1997 prosecution, on March 10, 1998, defendant moved to vacate both the 1992 and 1997 pleas. For the reasons stated, petitioner fails to persuade us defendant delayed unreasonably in bringing his section 1016.5 motion. Accordingly, we cannot conclude the trial court erred in failing to deny the motion on timeliness grounds.

### 5. *Substantial compliance*

■ Petitioner contends that the trial court erred in failing to deny defendant's section 1016.5 motion on the ground the immigration advisements defendant received in the 1992 prosecution were in substantial compliance with the statute.

Notwithstanding that section 1016.5 expressly provides that, under specified circumstances, "the court shall administer the following advisement" (§ 1016.5, subd. (a)) and then details a specific, tripartite, form of advisement (*ibid.*), some Courts of Appeal have held that "[t]he exact language of the advisement is not crucial" (*People v. Limones, supra,* 233 Cal.App.3d at p. 345 [dictum]; *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1475 [240 Cal.Rptr. 328, 65 A.L.R.4th 705] [dictum]; *People v. Barocio* (1989) 216 Cal.App.3d 99, 105 [264 Cal.Rptr. 573] [without analysis, citing *People v. Soriano, supra*]). The issue here, however, is not whether the advisements defendant received were sufficiently exact. Rather, defendant complains because, at the critical juncture, the mandated advisement respecting possible "exclusion from admission to the United States" (§ 1016.5, subd. (a)) was entirely omitted.

Section 1016.5 incorporates several distinct terms of art from immigration law. "Deportation is the removal or sending back of an alien to the country from which he or she has come . . . ." (Roseman, *The Alien and the Guilty Plea: Caveat to the Defense* (1984) 12 W. St. U. L.Rev. 155, 163.) "Exclusion" is "being barred from entry to the United States." (*Id.* at p. 165, fn.

omitted.) "Naturalization" is a process by which an eligible alien, through petition to appropriate authorities, can become a citizen of the United States. (*Id.* at pp. 167-168.)

Petitioner asserts that defendant's having been advised of possible deportation consequences effectively warned him that any reentry would result in removal, which petitioner asserts is the "functional equivalent" of exclusion. Aliens subject to deportation, however, are not automatically or indefinitely subject also to exclusion. An alien in the United States becomes subject to exclusion only if actually deported; some deportable persons who agree to depart the United States at their own expense may have available a voluntary departure remedy not entailing exclusion from reentry. (See 8 U.S.C. § 1229c(a).) Moreover, some deported persons are barred from reentry only for a period of years, the length of which may vary depending on the circumstances. (See 8 U.S.C. § 1182(a)(9)(A)(i) & (ii); see generally Kurzban's Immigration Law Sourcebook, *supra*, at pp. 57-58.)

Nevertheless, if defendant's circumstances at the time of his 1992 plea did not, in fact, allow for the possibility of his subsequent exclusion from the United States in the event he were deported, the advisements he received concerning deportation and naturalization would have been in substantial compliance with the requirements of section 1016.5, in that they would have informed defendant of the only consequences pertinent to his situation. Because the record does not disclose whether defendant would have been eligible for readmission, we are unable to conclude that the trial court erred in failing to deny defendant's motion on grounds of substantial compliance.

### 6. *Subsequent advisement*

*Finally, petitioner argues that any harm caused by the trial court's 1992 misadvisements was corrected when defendant, in the course of the 1997 prosecution, signed an accurate plea and waiver form stating he had violated his 1992 probation. Without authority, petitioner asserts that the 1997 form "corrects, nunc pro tunc," any error in the original advisements.*

Petitioner's retroactive-correction theory cannot be reconciled with section 1016.5 itself. It was the intent of the Legislature in enacting section 1016.5 to promote fairness to criminally accused noncitizens "by requiring in such cases that acceptance of a guilty plea or plea of nolo contendere be *preceded* by an appropriate warning of the special consequences for such a defendant which may result from the plea." (§ 1016.5, subd. (d), italics added.) This purpose logically cannot be served and, in fact, would be thwarted, by a rule permitting after-the-fact warnings. Such a rule also

would undermine the Legislature's expressed intention "that the court in such cases shall grant the defendant a reasonable amount of time to negotiate with the prosecuting agency in the event the defendant or the defendant's counsel was unaware of the possibility of deportation, exclusion from admission to the United States, or denial of naturalization as a result of conviction." (*Ibid.*) Obviously, advisements at the time of a subsequent probation violation would not afford a defendant an opportunity to negotiate the terms of his *original* conviction.

Most fundamentally, as discussed, our Legislature expressly sought to address in section 1016.5 the problem of a defendant's entering a plea of guilty or nolo contendere without knowing about its potential adverse immigration consequences. (§ 1016.5, subd. (d).) The evil targeted, thus, is not simply a defendant's lack of knowledge, but his or her lack of knowledge at a specified critical juncture. Such an evil cannot be corrected by provision of the required information after the critical juncture has passed. (Cf. *In re Martinez* (1959) 52 Cal.2d 808, 814 [345 P.2d 449] [advisement of right to counsel meant to ensure defendant is aware "at the time he pleads guilty"].) To conclude otherwise would undermine any prophylactic effect the statute might have.

Hence, the trial court did not err in rejecting petitioner's theory of subsequent correction of the partial advisements.

### B. *Prejudice Inquiry on Remand*

Since we have concluded that the trial court erred in failing to require that defendant demonstrate prejudice in connection with his section 1016.5 motion (see *ante*, at pp. 192-200), we must address defendant's contention that we should affirm the decision of the Court of Appeal because the record before us demonstrates he was, indeed, prejudiced by the trial court's failure to deliver complete section 1016.5 advisements. Defendant asserts he would not in 1992 have pleaded no contest to vehicle theft had the court fully advised him of the plea's potential immigration consequences, including the possibility of his being excluded from admission to the United States. As defendant points out, a deported alien who cannot return "loses his job, his friends, his home, and maybe even his children, who must choose between their [parent] and their native country" (*Galvan v. Press* (1954) 347 U.S. 522, 533 [74 S.Ct. 737, 744, 98 L.Ed. 911] (dis. opn. of Black, J.)).

Petitioner maintains the record does not demonstrate defendant was prejudiced, because defendant may have had actual knowledge of the relevant immigration consequences when, in 1992, he entered the plea at issue. To that extent, petitioner argues, defendant cannot now claim he would have

pleaded differently if he had been advised differently. As previously discussed, the trial court, in ruling on defendant's 1016.5 motion, did not consider evidence relating to the state of defendant's knowledge at the time he entered his plea. Petitioner asserts there was a "very strong prosecution case" on the vehicle-taking and receiving stolen property charges and notes defendant received a sentence of probation and eight months in jail. According to petitioner, on such facts it "seems virtually assured" that defendant would have pleaded no contest even if he had been properly advised.

■■■ Whether defendant was prejudiced by the trial court's incomplete advisements is a factual question, appropriate for decision by the trial court in the first instance. (See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 190, fn. 13 [83 Cal.Rptr.2d 548, 973 P.2d 527]; *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 850 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) In making that determination, the trial court should be guided by this opinion and our previous pronouncements. For prejudice from the erroneous application of a state procedural requirement, "the test generally applicable may be stated as follows: That . . . the court, 'after an examination of the entire cause, including the evidence,' is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Thus, "when the only error is a failure to advise of the consequences of the plea . . . the sentencing court must determine whether the error prejudiced the defendant, i.e., whether it is 'reasonably probable' the defendant would not have pleaded guilty if properly advised." (*People v. Walker, supra,* 54 Cal.3d at p. 1023; see generally *People v. Superior Court (Giron)* (1974) 11 Cal.3d 793 [114 Cal.Rptr. 596, 523 P.2d 636].)

It follows from the foregoing that the Court of Appeal should not have denied petitioner's application for writ relief on the ground that the trial court was not required to determine whether defendant had suffered prejudice in ruling on his section 1016.5 motion. In ruling summarily, however, the Court of Appeal did not reveal the grounds of its denial. Accordingly, we shall remand the cause in order that the Court of Appeal may consider any alternative grounds timely raised by defendant, such as whether the trial court's order may have been appealable. (Pen. Code, § 1238, subd. (a)(5); *People v. Thompson* (1970) 10 Cal.App.3d 129, 135 [88 Cal.Rptr. 753]; see fn. 6, *ante.*)

## DISPOSITION

We reverse the decision of the Court of Appeal denying the petition for a writ of mandate/prohibition and remand the cause with directions

to that court to conduct further proceedings in accordance with this opinion.

George, C. J., Baxter, J., Chin, J., and Brown, J., concurred.

**MOSK, J.,** Dissenting.—Unlike the majority, I do not find any requirement in the Penal Code that a noncitizen convicted criminal seeking to vacate the judgment under Penal Code section 1016.5 (section 1016.5) must show that he or she would have proceeded to trial if he or she had known about the possible immigration and nationality consequences of pleading guilty or no contest. Therefore, I respectfully dissent.

Subdivision (a) of section 1016.5 provides: "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court *shall administer* the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of [1] deportation, [2] exclusion from admission to the United States, or [3] denial of naturalization pursuant to the laws of the United States." (Italics added.)

In turn, subdivision (b) of section 1016.5 provides that if a court fails to give that warning and the possible consequence for the defendant is "[1] deportation, [2] exclusion from admission to the United States, *or* [3] denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, *shall vacate the judgment* and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty." (Italics added.)

On its face, the foregoing language does not admit of any exceptions. It is mandatory, qualified only by the requirement that the defendant show that he or she faces the possibility of one of the adverse consequences.

Nevertheless, I recognize that "our obligation is to construe the statute as a whole." (*People v. Rayford* (1994) 9 Cal.4th 1, 21 [36 Cal.Rptr.2d 317, 884 P.2d 1369].) Therefore, I agree that an individual in Jose Francisco Zamudio's position must also show that he or she did not know about the adverse immigration and nationality consequences of his plea. I reach this conclusion because subdivision (d) of section 1016.5 provides: "The Legislature finds and declares that in many instances involving an individual who is not a citizen of the United States charged with an offense punishable as a crime under state law, a plea of guilty or nolo contendere is entered without the

defendant knowing that a conviction of such offense is grounds for deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Therefore, it is the intent of the Legislature . . . to promote fairness to such accused individuals by requiring [compliance with section 1016.5]."

The language "without the defendant knowing" and "such accused individuals" in subdivision (d) of section 1016.5 permits a conclusion that an individual seeking to vacate a guilty or no contest plea must show a lack of knowledge of one or more of the three immigration or nationality consequences of that plea. "Section 1016.5 recognizes that noncitizens sometimes unknowingly expose themselves to [such] adverse . . . consequences by entering pleas." (*People v. Murillo* (1995) 39 Cal.App.4th 1298, 1305 [46 Cal.Rptr.2d 403].) That is the danger that the statute is designed to protect against, and if a defendant does know of each enumerated consequence, failing to advise him or her of them is harmless error. (See also *People v. Castaneda* (1995) 37 Cal.App.4th 1612, 1620 [44 Cal.Rptr.2d 666].)

But the majority engraft another requirement onto section 1016.5, concluding that the convicted criminal must also show that he or she would not have pleaded guilty or no contest. I disagree.

There is nothing in the language of section 1016.5 that may be read to impose such a requirement. The majority do not state otherwise. Rather, they find authority for it in Penal Code section 1404 (section 1404).

Section 1404 provides: "Neither a departure from the form or mode prescribed by this Code in respect to any pleading or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant, or tended to his prejudice, in respect to a substantial right."

In the case of section 1016.5, however, the Legislature has specified that it does implicate a substantial right when a noncitizen defendant who does not know about the possible consequences pleads guilty or no contest without being advised of the possibility of deportation, later exclusion, or bar to naturalization. Section 1404, therefore, is without effect on section 1016.5.

The majority state that an immigration consequence is a collateral matter in a criminal proceeding and that section 1404 "constitutes a legislative command that courts disregard technical errors." (Maj. opn., *ante*, at p. 199.) There is, however, nothing necessarily collateral or technical about deportation, exclusion, or loss of the opportunity to obtain United States citizenship.

The Legislature was trying to avoid a situation in which, based on imperfect information, a defendant could be banished from the United States and quite possibly separated from his family for life. The United States Supreme Court has noted the severity of such a consequence. Deportation "may result . . . in loss of both property and life; or of all that makes life worth living." (*Ng Fung Ho v. White* (1922) 259 U.S. 276, 284 [42 S.Ct. 492, 495, 66 L.Ed. 938].) "To banish [noncitizens] from home, family, and adopted country is punishment of the most drastic kind whether done at the time when they were convicted or later." (*Lehmann v. Carson* (1957) 353 U.S. 685, 691 [77 S.Ct. 1022, 1025, 1 L.Ed.2d 1122] (conc. opn. of Black, J.).) " 'Denatural- ization consequences [including possible deportation and exclusion] may be more grave than consequences that flow from conviction for crimes. . . . [T]o deprive a person of his American citizenship is an extraordinarily severe penalty. The consequences of such a deprivation may even rest heavily upon his children.' " (*Kungys v. United States* (1988) 485 U.S. 759, 792 [108 S.Ct. 1537, 1557, 99 L.Ed.2d 839] (conc. opn. of Stevens, J.).)

It is also important to understand that a proper advisement must refer to all three immigration and nationality consequences. With regard to immigra- tion consequences, exclusion and deportation are different consequences of a criminal conviction. "The differences between proceedings of exclusion and those of deportation are significant." (*Maldonado-Sandoval v. United States I. & N. Serv.* (9th Cir. 1975) 518 F.2d 278, 280 (*per curiam*).) The rights accorded to the alien in each are quite different. (*Leng May Ma v. Barber* (1958) 357 U.S. 185, 187 [78 S.Ct. 1072, 1073-1074, 2 L.Ed.2d 1246].) It is beyond the scope of this discussion to outline the differences—they are many, subtle, and complicated—but for an overview, one need only compare 8 United States Code section 1182(a)(2), with *id.*, section 1227(a)(2). The only point to be made here is that the Legislature was wise to require separate warnings about exclusion and deportation. Section 1016.5's require- ments are well grounded in title 8 of the United States Code, and the courts should adhere carefully to the Legislature's requirement that a defendant be aware of each possible adverse consequence to a noncitizen following entry of a guilty plea.[1]

---

[1]The majority also discuss, in what I perceive to be a dictum, article VI, section 13 of the California Constitution. Contrary to anything that may be said or implied in parts of that discussion, I believe that the constitutional provision bars only a *reviewing court* from reversing a judgment when there has been no prejudicial error. (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1054 [1 Cal.Rptr.2d 913, 819 P.2d 872]; *People v. Watson* (1956) 46 Cal.2d 818, 834-836 [299 P.2d 243]; *Herbert v. Lankershim* (1937) 9 Cal.2d 409, 476-477 [71 P.2d 220]; *Copley v. Putter* (1949) 93 Cal.App.2d 453, 456 [207 P.2d 876].) "[T]he final test is the 'opinion' of the reviewing court." (*People v. Watson, supra,* 46 Cal.2d 818, 835.) I have found

For the foregoing reasons, and on the basis of the record before us, I would affirm the decision of the Court of Appeal summarily denying the writ petition.

Kennard, J., concurred.

On July 12, 2000, the opinion was modified to read as printed above.

---

no authority for the suggestion that the constitutional provision prevents *the Legislature* from imposing a particular remedy for a particular trial court error.

Moreover, even if article VI, section 13 did apply to legislated remedies, I am not persuaded that the error is procedural in nature and hence covered by the provision.

And even if the constitutional provision applied to legislated remedies and the error were procedural in nature, it would appear, from the text of section 1016.5, that the Legislature has determined that it would be a miscarriage of justice for the erroneously entered plea to stand if the result is possible banishment from the United States. (See *id.*, subd. (d).)