Filed 3/8/13  P. v. Avetoom CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G044659 |
| v. | (Super. Ct. No. 96HF0016) |
| KARL IVAN AVETOOM, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Thomas M. Goethals, Judge.  Affirmed.

Law Offices of William J. Kopeny and William J. Kopeny for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, James D. Dutton, Emily R. Hanks, and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

In March 1997, a jury convicted Karl Ivan Avetoom of one count of selling stolen property, one count of grand theft by false pretenses, and two counts of operating a motorcycle chop shop as charged in a 32-count information. The convictions were based on the theft of Duane Cruz's 1990 Suzuki motorcycle with a vehicle identification number (VIN) of JS1GV7**3**A8L2100**380** (the Cruz 380 Bike).[1] The prosecutor alleged the Cruz 380 Bike was stolen, Avetoom altered or caused to be altered the Cruz 380 Bike's VIN to JS1GV7**8**A8L2100**880**,[2] and Avetoom sold the Cruz 380 Bike with the altered VIN to Bert's Motorcycles. That motorcycle, however, was never made available to Avetoom's defense, despite his motion that it be produced. In our prior nonpublished opinion *People v. Robert Burns Yule II & Karl Ivan Avetoom* (June 28, 1999, G022070) (*Avetoom I*), we affirmed Avetoom's convictions.

Almost 11 years later in April 2010, Avetoom filed a motion to vacate his convictions pursuant to Penal Code section 1473.6[3] based on newly discovered evidence. He argued newly discovered evidence established that in 1995, the prosecution had two motorcycles in its possession, one with VIN JS1GV7**3**A8L2100**380** and another with VIN JS1GV7**8**A8L2100**880**, and that the prosecution destroyed or altered the motorcycle with VIN JS1GV7**8**A8L2100**880** to falsely implicate him in the operation of a motorcycle chop shop based on the theft and alteration of the motorcycle with VIN JS1GV7**3**A8L2100**380**.

---

[1]    Because of the difficulty in reading VINs, and the slight variations in the VINs in this case, we have added emphasis in bold where the VINs are different.

[2]    Motorcycles have VINs on their frames and engines. Thus, a stolen motorcycle frame with an unaltered VIN may, after a trip to a "chop shop," be paired with an engine from another motorcycle and the engine number on that second engine may, or may not, have been altered.

[3]    All further statutory references are to the Penal Code, unless otherwise indicated.

After considering the parties' written submissions and hearing counsels' argument, *but without affording Avetoom an evidentiary hearing*, the trial court denied Avetoom's section 1473.6 motion to vacate his convictions. Avetoom appealed from the order denying his motion. On June 1, 2012, another panel of this court filed an opinion affirming the trial court's order denying Avetoom's motion. Avetoom filed a petition for rehearing, which we granted, and a new panel of justices was appointed. Once again, Avetoom's sole contention on appeal is the trial court erred when it failed to conduct an evidentiary hearing on his section 1473.6 motion to vacate his convictions. We disagree and affirm the order.

## FACTS

The statement of facts is taken from our prior nonpublished opinion, *Avetoom I, supra,* G022070.

"Avetoom loved motorcycles. He received his first motorcycle from his older brother when he was only 14 [years old]. By the time Avetoom was 16 years old, he was running a motorcycle repair business out of his mother's backyard.

"Later, Avetoom and [Robert] Yule, his one-time roommate, bought and sold motorcycles and motorcycle parts. They did considerable business with Bert's Motorcycles [(Bert's)]. At one point, Avetoom sold four motorcycles to the 'outside buyer' for Bert's. Each motorcycle contained a stolen engine with an altered vehicle identification number (VIN). Yule sold two motorcycles to Bert's. One contained a stolen engine. The VIN on the other motorcycle was altered. All of these motorcycles had been registered in either Avetoom's or Yule's names. Nearly all of the registration documentation contained nonexistent addresses for the purported sellers.

"The two men rented a storage unit together in Costa Mesa. They also rented storage units separately in Irvine. Police searches of the three storage units produced stolen motorcycle frames, stolen engines, stolen parts, and two stolen motorcycles.

3

"Avetoom and Yule were charged with conspiracy, 14 counts of grand theft auto, [eight] counts of possession of or receiving stolen property, [five] counts of grand theft, [one] count of possession of a motorcycle with a removed serial number, and [three] counts relating to owning or operating running a chop shop.  Before trial, the [prosecutor] dismissed [two] of the grand theft auto counts.  The court later struck [one] count of receiving stolen property.

"At trial, the investigating officer testified regarding a VIN verification form for one of the motorcycles sold to Bert's.[4]  The form contained another officer's verification that a federal identification number appeared on the stolen motorcycle.  The investigating officer testified that, in spite of the apparent verification, the signing officer 'told [him] differently.'  That remark was stricken, and the judge instructed the jury to ignore it.  [¶] . . . [¶]

"Avetoom and Yule were each convicted of two of the chop shop counts. Avetoom was also convicted of selling stolen property and grand theft by false pretenses. . . . The jury reached not guilty verdicts on the remaining counts."

After the 1997 trial, Avetoom filed a motion for new trial in which he argued the trial court erred in denying his motion for the production of the frames and cycles allegedly stolen (including the Cruz 380 bike).  The motion explained a Los Angeles Police Department detective had testified at trial that changing "3's" to "8's" on Suzuki brand motorcycles was actually easy to spot, since the original font used by Suzuki for an "8" was done in a "x" style.  Just closing "3's" into a circle or oval would not show the characteristic "x" of a Suzuki "8."  The new trial motion asserted that

---

[4]    "According to testimony, before the Department of Motor Vehicles (DMV) registers a motorcycle, a 'verifier' checks to see if the engine number and the VIN match the numbers on the documentation.  This verification may be done by a DMV employee, a dealership, the Auto Club, or a police agency.  This requirement can be bypassed by purchase of a 'defective title bond' which protects the registrant, the DMV, and any future buyer."

whether the "VIN was altered went to the heart of the prosecution's case." The trial court denied the motion and suspended sentence of three years and put Avetoom on probation.

In *Avetoom I, supra,* G022070, Avetoom argued on appeal the trial court erred in failing to instruct the jury sua sponte on unanimity (CALJIC No. 17.01) and failing to allow a rebuttal witness. We rejected his contentions and affirmed his convictions. (*Avetoom I, supra,* G022070.)

Nine years later, in September 2008, Avetoom filed a petition for writ of error coram vobis in this court. Avetoom asserted he located the Cruz 380 Bike and determined through numerous law enforcement officials that the VIN "ha[d] never been altered and remains in its original manufactured condition." (Italics omitted.) The petition was supported by numerous exhibits. The Orange County District Attorney filed an informal response, and Avetoom replied. On January 29, 2009, we summarily denied the petition. (*People v. Karl Ivan Avetoom* (Jan. 29, 2009, G040996.)

Later that year, Avetoom filed a petition for a writ of coram nobis in the Orange County Superior Court. The Orange County District Attorney filed a response. While that petition was pending, in March 2010, Avetoom filed a motion for relief seeking a writ of coram nobis, or relief under *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*) pursuant to section 1385. Eleven days later, Avetoom filed a reply and another petition for a writ of error coram nobis. The District Attorney requested the trial court summarily deny Avetoom's motion for writ of error coram nobis.

On April 29, 2010, Avetoom filed a motion to vacate his convictions pursuant to section 1473.6. Avetoom asserted there was newly discovered evidence demonstrating a member of the prosecution team committed fraud, a member of the prosecution team testified falsely, and a member of the prosecution team committed misconduct that resulted in the fabrication of evidence. The motion was supported by numerous exhibits, including Avetoom's trial exhibits and most of the exhibits that were included with his September 2008 petition for writ of error coram vobis filed in this

5

court. The only additional exhibit was a statement of probable cause purportedly prepared by Irvine Police Detective Eric Wiseman in May 1995.

Before we discuss the exhibits though, we recite the prosecution's facts from the 1997 trial as represented by Avetoom. Cruz reported the Cruz 380 Bike with the VIN ending 380 was stolen in February 1995. Later that month, someone permanently overstamped the VIN 380 to read 880. There was only one motorcycle at issue, the Cruz 380 Bike with VIN 380. Avetoom sold the Cruz 380 Bike with the altered VIN to Bert's. Wiseman testified the Orange County Auto Theft Task Force (OCATT) impounded the Cruz 380 Bike on August 2, 1995. He explained the Cruz 380 Bike was altered to become the Avetoom 880 Bike by permanently overstamping the "3s" with "8s." Cruz testified he thought the bike shown in the prosecutor's *photographs* was his motorcycle.

Based on the exhibits, we now provide a detailed account of what happened since Avetoom's trial. In 1999, the DMV sent Avetoom letters stating a Suzuki bike with VIN ending 880 was still in his name. An attorney friend suggested Avetoom find the motorcycle because there were "numerous conflicting reports" as to whether the Cruz 380 Bike's VIN had been altered. Later that year, Avetoom spoke with a sheriff's deputy who verified DMV records showed a motorcycle with the 880 VIN was still in Avetoom's name. The sheriff's deputy also checked the Cruz 380 Bike VIN with the DMV and learned a Stanton motorcycle shop owned the bike (or at least the frame). Avetoom called the DMV and learned the Cruz 380 Bike had been transferred to "The Frame Shop," in Stanton in 1996. In December 1999, Avetoom visited The Frame Shop. The owner told Avetoom that he had the 380 frame but the actual bike had been "dismantled . . . for parts over the years." The owner, Avetoom, and Avetoom's attorney friend inspected the frame and concluded the frame VIN was unaltered. Before trial, the prosecutor advised Avetoom's trial counsel that he could not inspect the Cruz 380 Bike because OCATT did not have possession of the motorcycle.

6

Avetoom contacted his trial attorney about postconviction relief. Avetoom explained it was factually impossible to have changed the "3s" to "8s" in February 1996 and have them be "3s" in 1999. The trial attorney said that showing the frame to have been unaltered would not be enough to reverse the conviction because the jury could have believed another motorcycle was the basis for the conviction.

In September 2002, Avetoom violated probation for operating a motorcycle business and was sentenced to prison. The United States Attorney in Arizona indicted Avetoom for being part of a major motorcycle theft operation. However, in January 2005 the United States Attorney voluntarily dismissed all counts against him.

In January 2005, on the advice of his attorney, Avetoom waited until the statute of limitations ran on the federal charges before pursuing postconviction exoneration. By then, however, Avetoom's trial attorney did not know how to get the case back before the court because Avetoom was out of custody.

By June 2007, Avetoom had located and retained an attorney named Coreen Ferrentino, recommended by his present appellate attorney. Ferrentino retained a private investigator, George B. Rowell, Jr. In April 2007,[5] Rowell went to The Frame Shop to inspect the motorcycle frame with VIN JS1GV73A8L2100**380**. He did not believe the VIN had been altered or manipulated. The owner, Gary Fuca, told Rowell that he had purchased the motorcycle (now just a frame as he had sold parts from it over the years) as salvage from a dealer auction in September 1996 and it had been in his possession since that time.

Shortly thereafter, Rowell returned to The Frame Shop and purchased the motorcycle frame with VIN JS1GV73A8L2100**380** for $400. Fuca provided Rowell with a bill of sale, a salvage certificate from August 1995, an Orange County Sheriff's

---

[5]      The reference to the year 2007 was possibly a typographical error in the declaration and should have been 2008 given the sequence as related by Avetoom concerning the retention of attorney Ferrentino in June 2007.

Department Verification of Vehicle Form, and a letter from OCATT, dated September 6, 1995 (the OCATT Letter). The OCATT Letter advised Alfonso Gayton, Jr., that detectives executed a search warrant and impounded a 1990 Suzuki motorcycle with a VIN of JS1GV7**3**A8L2100**380**. The letter advised Gayton that neither the legal nor the registered owner claimed interest in the motorcycle and upon proof of ownership he could claim the motorcycle. This letter had not been produced to the defense at Avetoom's 1997 trial. The Sheriff's Verification of Vehicle form indicated an Officer William Youngson inspected the motorcycle in December 1996, and Youngson concluded the VIN was unaltered; Youngson memorialized his findings in a June 2008 declaration (the Youngson Declaration).

In July 2008, Rowell met with CHP Officer Brian Habegger, an expert in VIN verification who memorialized his findings in a September 2008 declaration (the Habegger Declaration). Habegger inspected the 380 frame and determined the VIN was unaltered. He ran the VIN in the insurance claim search database and learned the motorcycle frame had the following history: (1) On February 16, 1995, the motorcycle was stolen from Duane Cruz; (2) On August 2, 1995, OCATT recovered the motorcycle; (3) On September 11, 1996, State Farm Insurance sent the motorcycle frame to a salvage buyer, Gus' Auto and Motorcycle in Inglewood; and (4) On November 4, 1996, the frame was sent to The Frame Shop in Stanton.

In May 2009, Avetoom discovered what he regarded as conclusive evidence establishing his innocence. Avetoom obtained a statement of probable cause purportedly authored by Wiseman in May 1995 (the Wiseman Affidavit). The Wiseman Affidavit had not been shown to the defense at the 1997 trial. There are three pages (pages 4, 16, and 17) of what appears to be a 14-page document. On May 23, 1995, Deputy District Attorney Thomas H. Crofoot signed the document. He "[a]pproved [the document] as to form and content." Wiseman's signature does not appear on the document submitted to this court.

8

The affidavit stated Wiseman believed Avetoom, Yule, and a third man were involved in the theft of motorcycles, disposing of motorcycle frames, altering or overstamping motorcycle engines, and selling these motorcycles to retail establishments. The affidavit plainly averred that none of the motorcycle frames under investigation had altered VIN's. The exact language was: "During my investigation I have observed that all of the motorcycles recovered in this case have contained motorcycle frames which are unaltered." The affidavit continued, "Due to the fact that all of the motorcycle engines recovered in this case have been altered, I believe that the subjects are also using dye stamps to over stamp the engine number." The parties do not dispute that at trial Wiseman testified the VIN on the 380 frame had been altered to 880.[6]

Based on this newly discovered evidence, Avetoom asserted Wiseman's affidavit established the Cruz 380 Bike's VIN was not altered and his testimony it was altered was false. Additionally, he claimed Wiseman's affidavit demonstrated the prosecution had the Cruz 380 Bike in its possession in May 1995, and in August 1995 took possession of another motorcycle, the Avetoom 880 Bike. He contended this newly discovered evidence entitled him to a new trial, or an evidentiary hearing.

The Orange County District Attorney filed an informal response. (Cf. Cal. Rules of Court, rule 4.551(b) [providing for informal responses to applications for habeas corpus relief]; *People v. Romero* (1994) 8 Cal.4th 728, 737.) The response argued Avetoom failed to establish a prima facie case for relief under section 1473.6. It pointed to the substantial evidence presented at trial in 1997 showing Cruz had been able to identify "some" of the unique characteristics of his bike on the bike recovered from

---

[6]     We cannot verify this, however, as the reporter's transcript from the 1997 trial is not part of the record. The preliminary hearing transcript is part of the superior court case file in case No. 96HF0016 that we took judicial notice of. At the preliminary hearing, Wiseman testified he inspected the VIN on the 380 frame and concluded it had been altered to 880. Based on that testimony, and the parties' representations concerning Wiseman's trial testimony, we assume Wiseman's trial testimony was consistent with his preliminary hearing testimony.

Bert's "with the VIN overstamped ending in 880." Moreover, it asserted Avetoom might readily have obtained a "duplicate title" on a motorcycle. As to the Wiseman Affidavit, the response argued that "at the time" it was prepared, his "investigation" had "revealed that stolen [motorcycle] engines were being placed on salvaged motorcycle frames," so that Wiseman did not discover the Suzuki had an "overstamped VIN until he ran the VIN through DMV and determined it was invalid." The response stated a "review of all the evidence presented at trial" showed there was no basis for Avetoom's claim there were two motorcycles, one with a 380 frame and one with an 880 frame, both seized from Bert's.

The district attorney's informal response was supported by three exhibits. The first, Exhibit 1, was Wiseman's arrest report for OCATT case No. 95-05-048 dated August 9, 1995, recounting the events of a mid-May 1995 search of Bert's. As relevant here, the report began by stating that when the investigating detective examined the motorcycle in question, "he was concentrating on the engine number and was unable to determine that this engine number had been tampered with or altered in any way." The report then explained Wiseman ran a DMV record check on the 880 VIN and it was not a conforming VIN. He stated the 380 VIN had been altered to an 880 VIN by overstamping the "3s" to "8s". Wiseman met with Cruz, who positively identified the motorcycle based on distinguishing characteristics. The second, Exhibit 2, was a printout of DMV computer records establishing the 880 VIN was invalid. That printout made reference to State Farm Insurance. The third, Exhibit 3, was a CHP stolen vehicle report that recounted a Suzuki motorcycle with the 380 VIN had been "switched to read" an 880 VIN, and sold to Bert's on March 1, 1995, by Avetoom. It also said the bike was confiscated from Bert's on August 2, 1995.

After moving for a continuance and requesting an evidentiary hearing on his section 1473.6 motion, Avetoom filed a reply to the district attorney's informal response, and another motion to set an evidentiary hearing on the section 1473.6 motion.

10

That motion too was supported by numerous exhibits, including additional newly discovered evidence Avetoom obtained from State Farm's file, which he had subpoenaed.

The new evidence included, as Exhibit M, what is purported to be the same Wiseman arrest report for OCATT case No. 95-05-048 dated August 9, 1995, that the district attorney submitted as Exhibit 1 with its informal response. Unlike Exhibit 1, Exhibit M states the investigating detective examined the motorcycle in question and "determined that this Suzuki VIN and engine number had not been tampered with or altered in any way."

Exhibit N is an OCATT Vehicle Release form dated January 12, 1996, for a 1990 Suzuki with the 380 VIN. The form stated Wiseman was the responsible detective releasing the motorcycle. In the blank specifying the party to whom the bike was being released were the handwritten words "State Farm" crossed out and, in handwriting, the word "Farmers" inserted. The same was done in the blank designated for writing the "registered owner and/or legal owner." The new evidence also included, as Exhibit O, a State Farm letter dated January 12, 1996, to Wiseman saying it was the owner of a 1990 Suzuki motorcycle and seeking to take possession of that motorcycle. State Farm's letter caption listed the "VIN" as "JS1GV7**B**ASL2100**380**" but the next line gave JS1GV7**8**A8L2100**880** as "Bike VIN Number." The loss date corresponded with the date of the theft of the Cruz 380 Bike.

Also included, as Exhibit P, were two blurry pictures, wholly indecipherable as they appear in the clerk's transcript in the appellate record, which Avetoom's trial attorney represented to be pictures of the "obliterated" 880 bike and VIN. Other new evidence, Exhibits Q and R, included two tow bills, barely legible in our record, but one can read they were for a 1990 Suzuki motorcycle and the claimant was Cruz. Finally, the reply also included a handwritten adjuster's log, Exhibit S (again, virtually illegible as it comes to us in the appellate record) but which does have a notation indicating that Cruz's policy was cancelled on January 22, 1995. Exhibit T is an e-mail

11

from the prosecutor now handling the file to Avetoom's postconviction counsel. Finally, Exhibit E, which had been included with Avetoom's motion, indicated Cruz suffered two prior convictions, and Gayton had been charged with an offense.

Based on this newly discovered evidence, Avetoom contended there were two motorcycles with two distinct VINs in OCATT's possession and control: JS1GV7**B**ASL2100**380** and JS1GV7**8**A8L2100**880**; OCATT destroyed one motorcycle VIN to prove Avetoom altered the other motorcycle VIN; and OCATT intentionally failed to disclose exculpatory evidence to Avetoom, including the motorcycles and evidence Cruz suffered two prior convictions. Avetoom also asserted the original police report was altered to hide the fact the detective who executed the search warrant at Bert's concluded the motorcycle with the VIN JS1GV7**8**A8L2100**880** had not been altered. He included a police report that stated the detective was focusing on the engine numbers and he was unable to determine whether the engine number had been tampered with in any way.

On November 5, 2010, the trial court conducted a hearing, but it did not conduct an evidentiary hearing. After stating it had read and considered the parties' written submissions, counsel presented their arguments. The trial court took the matter under submission. Avetoom filed a supplemental reply.

Two days later, the trial court issued an 11-page order denying Avetoom's section 1473.6 motion. In the context of its discussion of Avetoom's claim of *Brady* error, the court rejected Avetoom's assertion the Wiseman Affidavit showed any government misconduct. After noting Wiseman prepared but did not sign the statement of probable cause, the court opined Avetoom's "reliance on this unauthenticated photocopy is misplaced." The court stated: "Preliminarily, there is no showing that the quoted sentence [referring to the "unaltered" VINs of the bikes under investigation] is not a typographical error of some sort." The court explained the statement conflicted with other passages in the affidavit, and quoted passages that indicated Wiseman believed that

12

engine numbers had been altered and overstamped, with the "'motorcycle frames hav[ing] been switched.'" The court further noted that the "quoted sentence on which [c]ounsels [referring to the "various" counsel who had appeared on Avetoom's behalf] so heavily rely to prove a '*Brady* violation' is also inconsistent with sworn trial testimony." The trial court relied on a passage in the recitation of facts in our earlier unpublished opinion (*Avetoom I, supra,* G022070) that Avetoom and his codefendant each "'sold motorcycles'" to a particular dealer and "'All had altered VIN's.'" The court reasoned there "[was] no showing that the quoted sentence is not merely a misstatement or typographical error, rather than some sort of nefarious plot on the part of the prosecution to hide exculpatory information from the defense." The trial court dismissed Avetoom's remaining contentions as immaterial.

With regard to Avetoom's section 1473.6 motion, the trial court denied the motion as not falling within any of the three bases for relief provided by the statute, because there was "no actual showing of official fraud, false testimony, or fabrication." The court ruled there was "no showing production in 1997 of the Cruz 380 [B]ike would have undermined the prosecution's case, pointed unerringly to innocence, or would have been 'substantially probative'" of Avetoom's innocence. The court added Avetoom did not establish the Cruz 380 Bike could not have been discovered prior to 1997 with reasonable diligence. Finally, the court ruled the April 2010 section 1473.6 motion was untimely because it included declarations signed in 2008.

Avetoom appealed from the trial court's order denying his section 1473.6 motion. On June 13, 2011, this court issued an order limiting Avetoom's appeal to the denial of his section 1473.6 motion.

After the parties filed their appellate briefs, we took judicial notice of the superior court file in case No. 96HF0016 in an order dated June 13, 2011. (Cal. Rules of Court, rule 8.252; Evid. Code, §§ 452, 459.) After hearing oral argument, we filed an opinion affirming the trial court's denial of Avetoom's section 1473.6 motion. (*Avetoom*

13

*I, supra,* G022070.)  Avetoom filed a petition for rehearing, which we granted.  The order granting rehearing stated:  "Justice Bedsworth has recused himself, and the other members of the panel have requested that the Presiding Justice appoint an entirely new panel because they discussed the case with Justice Bedsworth."  We set a briefing schedule, took judicial notice of the writ proceedings in case No. G040996, the coram vobis writ proceedings, and appointed a new panel.  The parties again filed briefs in this court, and we again heard oral argument.

DISCUSSION

*I.  Section 1473.6*

Section 1473.6, subdivision (a), states:  "Any person no longer unlawfully imprisoned or restrained may prosecute a motion to vacate a judgment for any of the following reasons:  [¶] (1) Newly discovered evidence of fraud by a government official that completely undermines the prosecution's case, is conclusive, and points unerringly to his or her innocence.  [¶]  (2) Newly discovered evidence that a government official testified falsely at the trial that resulted in the conviction and that the testimony of the government official was substantially probative on the issue of guilt or punishment.  [¶] (3) Newly discovered evidence of misconduct by a government official committed in the underlying case that resulted in fabrication of evidence that was substantially material and probative on the issue of guilt or punishment.  Evidence of misconduct in other cases is not sufficient to warrant relief under this paragraph.  [¶] (b) For purposes of this section, "newly discovered evidence" is evidence that could not have been discovered with reasonable diligence prior to judgment.  [¶] (c) The procedure for bringing and adjudicating a motion under this section, including the burden of producing evidence and the burden of proof, shall be the same as for prosecuting a writ of habeas corpus.  [¶] (d) A motion pursuant to this section must be filed within one year of the later of the following:  (1) The date the moving party discovered, or could have discovered with the exercise of due diligence, additional evidence of the misconduct or fraud by a

14

government official beyond the moving party's personal knowledge.  (2) The effective date of this section."

*People v. Germany* (2005) 133 Cal.App.4th 784, 791 (*Germany*), is the only published case to date addressing the applicability and scope of section 1473.6, a statute the Legislature enacted in response to the Los Angeles Police Department Rampart scandal.  Section 1473.6's purpose was to provide those who suffered convictions but were released from custody a method to attack their convictions based on government misconduct.  (*Ibid.*)

In interpreting section 1473.6, the *Germany* court stated:  "As specified in section 1473.6, subdivision (c), the trial court, in considering a motion under section 1473.6, utilizes the same procedures applicable to a petition for a writ of habeas corpus, which procedures are set forth in California Rules of Court, rule 4.551.  Thus, if the party moving to vacate under section 1473.6 makes a prima facie showing for relief, the trial court must issue an order to show cause.  (Rule 4.551(c)(1).)  In deciding whether a prima facie showing has been made, 'the court takes [the moving party's] factual allegations as true and makes a preliminary assessment regarding whether [the moving party] would be entitled to relief if his . . . factual allegations were proved.' [Citation.]  Upon the issuance of an order to show cause, the respondent may file a return (rule 4.551(d)), and the moving party may file a denial (rule 4.551(e)).  Thereafter, 'the court must either grant or deny the relief sought by the [motion to vacate] or order an evidentiary hearing.  An evidentiary hearing is required if, after considering the [motion to vacate], the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the [moving party] may be entitled to relief and the [moving party's] entitlement to relief depends on the resolution of an issue of fact."  (Rule 4.551(f).)'"  (*Germany, supra,* 133 Cal.App.4th at pp. 790-791, fn. omitted.)  In a motion proceeding, a trial court may resolve evidentiary conflicts without hearing live testimony.  (*People v.*

15

*Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 201.) We independently review the record to determine whether the trial court properly denied Avetoom's section 1473.6 motion to vacate his convictions. (*In re Smith* (2003) 114 Cal.App.4th 343, 360-361 [when lower court considers a *petition for writ of habeas corpus* without conducting an evidentiary hearing, we independently review the record].)

Here, Avetoom argues the trial court erred in denying his section 1473.6 motion to vacate his convictions without affording him an evidentiary hearing. We disagree as Avetoom failed to state a prima facie case for relief.

In his motion, Avetoom asserted he possessed newly discovered evidence demonstrating government misconduct under all three of section 1473.6's categories. Of the newly discovered evidence he possessed, only one item was discovered within section 1473.6's one-year statute of limitations—the Wiseman Affidavit, discovered May 2009. The other items (Exhibit A-April 2007; Exhibit D-June 2008; Exhibit G-September 2008; Exhibit H-September 2008) were all discovered before April 29, 2009. But that is of no consequence because as Avetoom conceded in his motion to vacate, the Wiseman Affidavit "is the springboard for [his] motion to vacate his convictions under . . . [s]ection 1473.6."[7]

Exhibit B to Avetoom's section 1473.6 motion is what is purported to be a statement of probable cause prepared by Detective Eric Wiseman. The affidavit appears to be a total of 14 pages, as it begins on page 4 and the signature page is page 17, but we have only three pages: pages 4, 16, and 17.

_____

[7]      We need not address the issue of whether section 1473.6's statute of limitations applies in this case based on our conclusion Avetoom failed to state a prima facie case for relief. We note, however, the same procedures applicable to writs of habeas corpus, a civil proceeding, are applicable to section 1473.6 motions. Thus, as in civil cases, a statute of limitations defense in the section 1473.6 context might be waived unless pleaded and proved. (5 Witkin, Cal. Procedure (4d ed. 2008) Pleading, §§ 1117, 1118.) We need not decide that question here however.

16

Although the affidavit in its first sentence states Wiseman prepared it, Wiseman did not sign the affidavit. Instead, Deputy District Attorney Thomas H. Crofoot signed the affidavit. Crofoot "approved [the affidavit] as to form and content." We cannot conclude the affidavit purportedly prepared by Wiseman but not signed by him under penalty of perjury is authentic. Assuming the affidavit conflicts with his trial testimony, which as we explain below we are not certain it does, we cannot attribute to Wiseman statements he has not sworn under oath to be true. In other words, we cannot rely on an unauthenticated affidavit that allegedly conflicts with Wiseman's trial testimony to establish Wiseman testified falsely. Thus, the record includes insufficient evidence the affidavit is what Avetoom claims it to be—evidence Wiseman initially declared all the motorcycle frames he found at Bert's were unaltered but later falsely testified the motorcycle frame with VIN JS1GV73A8L2100**380** found at Bert's was altered.

Second, the portion of the Wiseman Affidavit we have before us is internally inconsistent on the point Avetoom attempts to establish. Although Wiseman stated, "[he] observed that all of the motorcycles recovered in this case have contained motorcycle frames which are unaltered[,]" he also made other statements that conflict with this statement. Wiseman stated Avetoom was "involved in the theft of numerous motorcycles, the disposal of the stolen motorcycle frames, the alteration and overstamping of stolen motorcycle engines, the changing of stolen component motorcycle parts and the sale of these motorcycles to retail dealerships." Wiseman later said, "Due to the fact that all of the motorcycle engines recovered in this case have been altered, I believe that the subjects are *also* using dye stamps to over stamp the engine number."

Based on a complete reading of the portions of the purported Wiseman Affidavit we have before us, we agree with the trial court's conclusion the sentence the "motorcycle frames . . . are unaltered" is "merely a misstatement or typographical error."

17

Admittedly the word unaltered was used in connection with motorcycle frames and the word altered used in connection with motorcycle engines. But we cannot overlook the statement, "I believe that the subjects are *also* using dye stamps to over stamp the engine number." (Italics added.) The use of the word "also" suggests both the motorcycle engines and the motorcycle frames were being overstamped. This conflicts with the earlier statement all the motorcycle frames were unaltered. Finally, it is not surprising we have found inconsistencies when we have before us only three pages of what apparently is a 14-page affidavit.

Thus, "the springboard" of Avetoom's claim is unauthenticated and therefore untrustworthy. Additionally, his argument the other exhibits included with his motion to vacate buttress his claim the purported Wiseman Affidavit established he testified falsely and there were two motorcycles is not persuasive.

With respect to the newly discovered evidence Avetoom included with his reply brief, that evidence too is insufficient to state a prima facie case for relief. Based on our review of that evidence, we cannot conclude it gives rise to a reasonable inference there were two motorcycles and Wiseman or others destroyed or otherwise altered the Avetoom 880 Bike VIN sold by Avetoom to convict him for having stolen the Cruz 380 Bike.

We begin by noting that Avetoom's reply fails to explain how each piece of newly discovered evidence demonstrates the egregious misconduct he attributes to the Irvine Police Department and the Orange County District Attorney. Indeed, he concedes "The following summary of the newly discovered evidence is not exhaustive[.]" It was Avetoom's duty to offer newly discovered evidence establishing a prima facie case for relief and explain how that evidence demonstrates he was entitled to relief or at a minimum an evidentiary hearing.

18

Avetoom does highlight a few of the pieces of evidence, and we will discuss those. But first we must discuss the district attorney's Exhibit 1 included with his informal response before we address Avetoom's claims.

Exhibit 1 was Wiseman's arrest report for OCATT case No. 95-05-048 dated August 9, 1995, recounting the events of a mid-May 1995 search of Bert's. As relevant here, the report stated that when the investigating detective examined the motorcycle in question, "he was concentrating on the engine number and was unable to determine that this engine number had been tampered with or altered in any way." With his reply, Avetoom included Exhibit M, which was the same Wiseman arrest report for OCATT case No. 95-05-048 dated August 9, 1995. Both Exhibits 1 and M indicate Wiseman and his supervisor signed the arrest report on August 9, 1995. However, Exhibit M is materially different, in part, from the language quoted above from Exhibit 1. Exhibit M states the investigating officer "determined that this Suzuki VIN and engine numbers had not been tampered with or altered in any way." Although we agree the reports are different, we cannot conclude Wiseman or someone else falsified the arrest report to cover up the government's prior misconduct and support the district attorney's argument in these postconviction proceedings. We note it was the district attorney who first submitted the arrest report, and Avetoom who subsequently submitted a different version of the same arrest report.

The other evidence Avetoom relied on (Exhibit N-OCATT Vehicle Release form & Exhibit O-State Farm letter to Wiseman) does not point unerringly to his innocence. Exhibit N is an OCATT Vehicle Release form that states the motorcycle with VIN JS1GV7**3**A8L2100**380** will be released to State Farm Insurance and the registered or legal owner is State Farm Insurance. Someone crossed out both references to State Farm Insurance and replaced them with Farmers Insurance. Although the form states Wiseman was the detective responsible for releasing the motorcycle, the signature on the document is unintelligible. Because we do not know who altered the document, there is no

19

foundation for its admission. Additionally, it is reasonable to use the legal VIN of a vehicle when describing that vehicle. Thus, we cannot conclude Exhibit N establishes the existence of two motorcycles.

Exhibit O is a letter from State Farm Insurance to "Eric Wisman" dated January 12, 1996, stating it is the legal owner of the motorcycle described in the beginning of the letter. The letter states a claim number, a description of the motorcycle (1990 Suzuki motorcycle), that Cruz is the insured, a loss date of February 16, 1995, and that Bert's Frame Shop owns the engine. The letter also states the following: "VIN: JS1GV7**B**ASL2100**380**" and under it "Bike VIN Number: JS1GV7**8**A8L2100**880**." Again, we are unsure how this demonstrates there were two motorcycles, law enforcement knew there were two motorcycles, and law enforcement misrepresented and/or manipulated the truth to convict Avetoom.

The remaining exhibits are either undecipherable (Exhibits P, Q & R) or are of little relevance to Avetoom's claim the government withheld and then altered evidence to wrongly implicate him in a chop shop operation (Exhibits S & T).

Avetoom's claim of *Brady* error requires no separate discussion. Section 1473.6's legislative history demonstrates it is the exclusive remedy, "'other than a pardon,'" for "those no longer in the system to challenge their judgment when they learn that their conviction was obtained in part because of fraud or false evidence by a government official." (*Germany, supra,* 133 Cal.App.4th at p. 791.) By 2008, Avetoom was "no longer in the system," and thus his only remedy was by way of section 1473.6 or a pardon. Thus, we conclude the trial court properly denied his section 1473.6 motion.

A few final thoughts. Avetoom acknowledges that he did nothing for years so as to allow the statute of limitations in his federal case to expire. Avetoom's delay in seeking relief and the voluminous record in this case makes it difficult to parse his contentions. Over 13 years after his convictions, Avetoom cobbles together various documents to assert there is only one conclusion that can be drawn, i.e., that the

20

government committed egregious misconduct to convict him.  We disagree.  Avetoom's syllogism is faulty as his exhibits do not establish the vast conspiracy he seeks to prove.

DISPOSITION

The judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.