Filed 11/22/1  P. v. Rodriguez CA6

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>LIDIA ANTONIETA RODRIGUEZ,<br><br>  Defendant and Appellant. | H038288<br>(Monterey County<br>Super. Ct. No. CR18123)<br><br>ORDER |

The above captioned opinion, which was filed on October 25, 2013, is hereby modified as followed:

On pages 8, the following language is deleted:  "She also would have learned that a plea to transportation of a controlled substance would have exposed her to the same immigration consequences as her possession plea.  Section 212(c) relief from deportation was liberally granted in the early 1990s (*St. Cyr*, *supra*, 533 U.S. at pp. 295-296).  As a first-time offender with a long residence and family ties in the United States whose deportation would have deeply impacted her United States citizen children, it appears Rodriquez would have been a favorable candidate for such relief.  (*Id*., at p. 296, fn. 5.)"

On page 8, before the sentence beginning with "Accordingly," the following language is added:  "Additionally, Rodriguez does not assert that she would have refused the plea and proceeded to trial.  She insists she would have succeeded in negotiating a different plea.  We agree with the trial court that this scenario is speculative.  The evidence against Rodriguez was overwhelming and she offers no evidence in support of

her motion establishing that she would have been successful in negotiating a different plea."

There is no change in the judgment.

The petition for rehearing is denied.

_____

Grover, J.

_____

Premo, Acting P.J.

_____

Mihara, J.

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LIDIA ANTONIETA RODRIGUEZ,<br><br>    Defendant and Appellant. | H038288<br>(Monterey County<br>Super. Ct. No. CR18123) |

Defendant Lidia Antonieta Rodriguez appeals the trial court's denial of her Penal Code section 1016.5 motion to vacate a 1993 judgment of conviction for cocaine possession.  For the reasons explained below, we will affirm the trial court's order denying Rodriguez's motion.

## BACKGROUND

Rodriguez, a native and citizen of Mexico, immigrated to the United States in 1970 when she was 14 years old.  In 1980, she became a legal permanent resident of the United States, under the name Lidia Duenas Duenas.

In 1993, Rodriguez entered a negotiated guilty plea in Monterey County Superior Court to one count of possession for sale of eight ounces of cocaine, in violation of Health and Safety Code section 11351.  The charge stemmed from the execution of a search warrant at Rodriguez's Salinas home where police officers seized one large package and numerous small bindles of cocaine.  At the time, Rodriguez was married with five children.  The trial court suspended imposition of sentence for five years, placed

Rodriguez on probation, and ordered her to serve 200 days jail. The 1993 conviction is the subject of this appeal.

Rodriguez has three other drug-related convictions. In July 2000, again in Monterey County Superior Court, Rodriguez entered a negotiated no contest plea to one count of possession for sale of a controlled substance (Health & Saf. Code, § 11351) and one count of sale of a controlled substance (Health & Saf. Code, § 11352). That incident also stemmed from a search of Rodriguez's home. Rodriguez was sentenced to nine years prison, but execution of that sentence was suspended for five years, and she was ordered to serve 365 days jail. In August 2007, Rodriguez was convicted in San Diego County Superior Court of one count of transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)). She was sentenced to two years prison for that offense.

In April 2007, the Department of Homeland Security instituted immigration proceedings against Rodriguez, following her return to the United States at a southern California port of entry. Based on her 1993 and 2000 convictions, Rodriguez was charged as an inadmissible arriving alien, removable from the United States as a controlled substance offender pursuant to section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act (INA)(8 U.S.C. § 1182 (a)(2)(A)(i)(II)). The Department of Homeland Security supplemented its charges in 2009 and 2010, ultimately alleging that each of Rodriguez's drug-related convictions served as a basis for her removal under the controlled substance and the aggravated felony prohibitions of the INA. (8 U.S.C. §§ 1227(a)(2)(B)(i) [controlled substances], 1227(a)(2)(A)(iii) [aggravated felony].)

In March 2011, the Immigration Court sustained some of the charges of removability. The Immigration Court found Rodriguez's 1993 and 2007 convictions constituted controlled substance offenses, each serving as an independent basis for removal under the INA. The Immigration Court also found Rodriguez's 1993 conviction was a drug trafficking crime, and thus an aggravated felony, serving as an additional

basis of removal under the INA.[1] Rodriguez's petition for review from the Board of Immigration Appeals' decision upholding the Immigration Court's ruling is pending before the Ninth Circuit Court of Appeals.

In November 2011, Rodriguez moved the trial court to vacate her 1993 judgment of conviction and to withdraw her plea pursuant to Penal Code section 1016.5.[2] She argued that she was not given the section 1016.5 advisement before entering her plea in 1993, and that she would not have pleaded to the charge had she been given the advisement. According to her supporting declaration, Rodriguez would have negotiated a plea to a felony transportation offense, as a non-aggravated felony. She would not have

---

[1] The Immigration Court rejected the allegation that the 2007 offense constituted an aggravated felony because the conviction documentation did not establish that Rodriguez was trafficking the marijuana. The Immigration Court also found that the Department of Homeland Security failed to sustain the charges of removability based on the 2000 convictions because the documents proving those convictions did not identify the controlled substance, or whether Rodriguez engaged in the trafficking of the substance.

[2] Penal Code section 1016.5 provides: "[¶] (a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. [¶] (b) Upon request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of the advisement as described in this section. If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement."

agreed to a plea that resulted in her automatic deportation and permanently barred her reentry to the United States.

At the hearing on her motion, the court commented on the negotiation and discretion utilized by both the prosecutor and Rodriguez's attorney in resolving the 1993 case. The court specifically noted that although the People had a strong case against Rodriguez, she received a grant of probation despite her presumptive ineligibility under Penal Code section 1203.073. [3] The court also noted Rodriguez's failure to provide a declaration from her 1993 attorney concerning the plea agreement, and questioned Rodriguez's diligence in bringing a section 1016.5 motion in 2011, rather than in 2007 when immigration proceedings were initiated. The trial court denied Rodriguez's motion for lack of prejudice, rejecting as speculative Rodriguez's arguments about what would have happened in 1993 had she been given the section 1016.5 advisement. Rodriguez filed a timely appeal of the denial of her motion. (Penal Code, § 1237, subd. (b).)

## DISCUSSION

We review the denial of a motion to vacate judgment under Penal Code section 1016.5 for abuse of discretion. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192.)

A defendant who seeks to withdraw a plea under section 1016.5, in addition to showing that she was not given the immigration advisement, [4] must show that she was prejudiced by its absence. (*Zamudio*, *supra*, 23 Cal.4th at pp. 192, 199-200.) A defendant also must show, at the time of the motion, more than a remote possibility that

---

[3] Penal Code section 1203.073 prohibits a person convicted of certain Health and Safety Code violations, including a conviction under section 11351, from receiving probation or a suspended sentence absent a finding by the court that the interests of justice would be served by such a disposition.

[4] Section 1016.5, subdivision (b), presumes that a defendant has not received the advisement absent a record that is was given. Here, because the People could not produce a record showing compliance with the section 1016.5 advisement, the trial court presumed that the advisement had not been given.

the conviction will have adverse immigration consequences. (*Id*., at p. 192; Penal Code, § 1016.5, subd. (b).) Finally, a defendant must show that she acted with reasonable diligence in bringing the motion. (*Zamudio*, *supra*, 23 Cal.4th at pp. 203-204.)

Rodriguez argues that the trial court abused its discretion in concluding she was not prejudiced by the earlier court's failure to administer the section 1016.5 advisement. To establish prejudice, a defendant must demonstrate a reasonable probability that she would not have entered the plea if she had been properly advised. (*Zamudio*, *supra*, 23 Cal.4th at p. 210.) As recently articulated by the California Supreme Court in *People v. Martinez* (2013) 57 Cal.4th 555 (*Martinez*), the test is "what the defendant would have done, not whether the defendant's decision would have led to a more favorable result." (*Id.,* at p. 562.)

Rodriguez contends the trial court failed to specify how the scenario of an alternative plea to a transportation offense was speculative. She asserts that the scenario was not speculative because she would not have accepted a plea that would have separated her from her six children. Instead, she would have asked her attorney about other potential pleas. Rodriguez argues further that she probably would have successfully negotiated a transportation plea with the prosecutor because her attorney and the prosecutor shared a mutual concern for the impact of Rodriguez's incarceration on her children. According to Rodriguez, the prosecutor would have been equally supportive of a plea to a non-aggravated felony because of the effect Rodriguez's deportation would have had on her children. She also argues, albeit inconsistent with her transportation plea argument, that she would have agreed to serve more jail or even prison time to avoid "mandatory removal and permanent banishment."

We are not persuaded by Rodriguez's argument. She has not established that she "would have rejected the existing bargain to accept or attempt to negotiate another." (*Martinez, supra*, 57 Cal.4th at p. 559.) As the People point out, Rodriguez's prejudice analysis focuses on the lack of relief from removal available to Rodriguez today. Indeed,

Rodriguez cites in her opening brief to the current cancellation of removal statute (8 U.S.C., § 1229b(a)) which precludes relief from removal for an aggravated felony. Likewise, the declaration of experienced immigration counsel, filed in the trial court in support of Rodriguez's motion, also discusses only current immigration law. But relief from removal under current law is significantly different than the relief from deportation available to Rodriguez at the time of her 1993 plea, before Congress enacted comprehensive amendments to the INA in 1996. (Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132 (April 24, 1996) 110 Stat. 1214; Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208 (Sept. 30, 1996) 110 Stat. 3009.)

As it would today, in 1993 Rodriguez's section 11351 conviction subjected her to deportation because it qualified under the former INA as both an aggravated felony conviction (8 U.S.C. §§ 1251(a)(2)(A)(iii), 1101(a)(43) (1988)) and a controlled substance conviction (8 U.S.C. § 1251(a)(2)(B)(i) (1988)).[5] But in 1993 Rodriguez would have been eligible for a discretionary waiver of deportation by the Attorney General pursuant to section 212(c) of the INA. (8 U.S.C. § 1182(c) (1988); *I.N.S. v. St. Cyr* (2001) 533 U.S. 289, 293, 294-295 (*St. Cyr*).) Unlike current law precluding relief from removal for an aggravated felony conviction, former section 212(c) of the INA precluded an alien from receiving discretionary relief from deportation only when the alien was "convicted of one or more aggravated felonies and . . . served for such felony or felonies a term of imprisonment of at least 5 years." (8 U.S.C. § 1182(c) (1988).) Thus, like the petitioner's conviction in *St. Cyr*-selling a controlled substance under

_____

[5] Before 1996, the INA provided two means of removing an alien from the United States. Aliens already present in the United States were placed in "deportation" proceedings, while aliens seeking entry or reentry into the country were placed in "exclusion" proceedings. IIRIRA abolished this distinction and established a unified "removal" procedure, applicable to aliens either deportable or excludable prior to 1996. (*Vartelas v. Holder* (2012) 132 S. Ct. 1479, 1481-1482.)

Connecticut law-Rodriguez's conviction would not have created a statutory bar to section 212(c) relief from deportation in 1993. (*St. Cyr, supra,* 533 U.S. at p. 293.) Even if Rodriguez had received the four-year maximum sentence for the possession offense under Health and Safety Code, section 11351 as it existed in 1993, she would have been eligible for section 212(c) relief.

According to the Supreme Court in 2000, "the class of aliens whose continued residence in this country has depended on their eligibility for § 212(c) relief is extremely large, and not surprisingly, a substantial percentage of their applications for § 212(c) relief have been granted. Consequently, in the period between 1989 and 1995 alone, § 212(c) relief was granted to over 10,000 aliens." (*St. Cyr*, *supra*, 533 U.S. at pp. 295-296.) The criteria for section 212(c) relief included "the seriousness of the offense, evidence of either rehabilitation or recidivism, the duration of the alien's residence, the impact of deportation on the family, the number of citizens in the family, and the character of any service in the Armed Forces." (*Id*., at p. 296, fn. 5.) Indeed, "[g]iven the frequency with which § 212(c) relief was granted in the years leading up to AEDPA and IIRIRA, preserving the possibility of such relief would have been one of the principal benefits sought by defendants deciding whether to accept a plea offer or instead to proceed to trial." (*Id*., at p. 323.) As the Supreme Court further explained, "[e]ven if the defendant were not initially aware of § 212(c), competent defense counsel, following the advice of numerous practice guides, would have advised him concerning the provision's importance." (*Id*., at p. 323, fn. 50.)

On the record before us, and in light of the INA as it existed in 1993, we conclude that the trial court did not abuse its discretion in denying Rodriguez's motion. Rodriguez's aggravated felony conviction did not bar her eligibility for relief from deportation in 1993. Rodriguez would have been deportable in 1993, but also eligible for discretionary relief from deportation, even if she had pled to transportation of a controlled substance under Health and Safety Code section 11379, subdivision (a). This is because

transportation of a controlled substance under Health and Safety Code section 11379, subdivision (a), qualified as a controlled substance conviction and deportable offense under the INA in 1993. (8 U.S.C. § 1251(a)(2)(B)(i) (1988); *Hernandez-Aguilar v. Holder* (9th Cir. 2010) 594 F.3d 1069; *Mielewczyk v. Holder* (9th Cir. 2009) 575 F.3d 992, 996.) If Rodriguez had received the section 1016.5 advisement and had sought the advice of immigration counsel, she would have learned that admitting to a Health and Safety Code section 11351 violation would not result in mandatory deportation or permanent banishment. She also would have learned that a plea to transportation of a controlled substance would have exposed her to the same immigration consequences as her possession plea. Section 212(c) relief from deportation was liberally granted in the early 1990s (*St. Cyr*, *supra*, 533 U.S. at pp. 295-296). As a first-time offender with a long residence and family ties in the United States whose deportation would have deeply impacted her United States citizen children, it appears Rodriquez would have been a favorable candidate for such relief. (*Id*., at p. 296, fn. 5) Accordingly, we find no error in the trial court's finding that Rodriguez failed to show prejudice, even when evaluated in light of *Martinez*. Because we uphold the trial court's prejudice determination, we need not decide whether the ruling also could be upheld for lack of diligence.

## DISPOSITION

The order denying Rodriguez's motion to vacate judgment is affirmed.

_____

Grover, J.

**WE CONCUR:**

_____

Premo, Acting P.J.

_____

Mihara, J.