Filed 3/30/15  P. v. Caballero CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040961 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 85255) |
| v. | |
| GABRIEL CABALLERO, | |
| Defendant and Appellant. | |

Defendant Gabriel Caballero appeals the trial court's order denying his Penal Code section 1016.5[1] motion to vacate a 1983 judgment of conviction for robbery.  The court denied defendant's motion as untimely and for failure to show prejudice.  Finding no abuse of discretion, we will affirm.

## I.  TRIAL COURT PROCEEDINGS

### A.    THE 1983 PLEA

Defendant pleaded no contest to robbery (§ 211) pursuant to a negotiated disposition in which the district attorney agreed to probation or a maximum two-year prison term, and to dismiss an assault with a deadly weapon charge and a weapons enhancement.  According to the preliminary hearing transcript, used as a factual basis for the plea, defendant and two others robbed a man in the parking lot of a nightclub in September 1982.  The victim had fallen asleep in a friend's car while his friend was in the nightclub.  Defendant threatened the victim with a knife, demanding the victim's money.

---

[1]  Unspecified statutory references are to the Penal Code.

1

After he was robbed of his wallet and watch, the victim attempted to impede the trio's getaway, when a co-defendant struck him with a drinking glass cutting his face. Nightclub security intervened, defendant was arrested, and the victim testified at the preliminary hearing.

Defendant was a 26-year-old recent immigrant to the United States from Mexico. Before his sentencing, he gave a written statement to the probation department referring to the robbery as the product of a "crazy idea to do something really wild, something more shameful then [*sic*] one could imagine" to "demonstrate the superiority of one individual over another," for which he was "deeply sorry and ashamed."[2]  A section 1203.03 pre-sentence diagnostic report by the Department of Corrections indicated an immigration officer had spoken to defendant and defendant was on an immigration hold. The report also noted defendant's deep shame and remorse for the robbery.

On October 7, 1983, defendant was sentenced to two years in prison (with 109 days presentence credit) followed by a term of parole.

B.     THE MOTION TO VACATE

In January 2014, defendant filed a motion to vacate his conviction under section 1016.5.[3]  Defendant asserted that he had not received the immigration advisement

---

[2]  Defendant wrote, "On that day I approached the victim and surprised him by grabbing him by the hair with one hand and with the other I held a fingernail clipper.  I made him take out his wallet and give it to Jose who was standing alongside of me, and I took his watch too."

[3]  Section 1016.5 provides:  "[¶]  (a) Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:  [¶]  If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.  [¶]  (b) Upon request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of the advisement as described in this section.  If, after January 1, 1978, the court fails to advise the defendant as required by this section and the defendant shows that

2

mandated by that section, and that his conviction had already caused adverse immigration consequences. He explained in an accompanying declaration: "As a result of that plea and conviction, I was deported to Mexico and deemed inadmissible by the immigration authorities of the United States. I would have never entered into the plea bargain and would have chosen trial if I had been properly advised of the dire and adverse immigration consequences of entering that plea, despite the probability of deportation." He claimed prejudice in that his inadmissibility prevents him from legalizing his status based on his marriage to a U.S. citizen (which appears to have occurred after he reentered the country illegally). His attorney submitted a declaration clarifying that defendant's conviction "renders him unable to seek a waiver for unlawful presence while he adjust [*sic*] his status to that of a lawful permanent resident through his U.S. citizen wife." Although they are absent from the appellate record,[4] defendant submitted two exhibits in support of his motion. The motion identified exhibit A as a "September 11, 1991 Order to Show Cause issued by the Immigration and Naturalization Service," and exhibit B as a "Deportation Order issued by the Immigration Judge on September 12, 1991."

Defendant testified that he married in 1998, and his wife is a United States citizen. In 2013 he contacted an attorney because he "want[ed] to be legal," and that is when he learned that the robbery conviction affected his admissibility to the United States.[5] In

conviction of the offense to which defendant pleaded guilty or nolo contendere may have the consequences for the defendant of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States, the court, on defendant's motion, shall vacate the judgment and permit the defendant to withdraw the plea of guilty or nolo contendere, and enter a plea of not guilty. Absent a record that the court provided the advisement required by this section, the defendant shall be presumed not to have received the required advisement."

[4] Documents identified as exhibits A and B to defendant's motion to vacate are not included in the record on appeal but are not necessary to resolve the appeal.

[5] "The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." (8 U.S.C. § 1101(a)(13)(A).) In 1983, defendant's robbery conviction excluded him from admission into the United States (8 U.S.C. §

3

1983 he did not know that accepting the plea would affect his future immigration status. He was never told the conviction would prevent him from being admitted to the United States or denied naturalization. Although defendant was certain he had not received the immigration advisement at his plea hearing, he did not remember making any statements expressing deep remorse and shame over the incident, claiming intoxication, or acknowledging rash, impulsive behavior. He recalled being arrested, but he denied stealing anything, and he denied being contacted by federal immigration officials while in custody.

After reading an excerpt from exhibit A-the 1991 order to show cause issued by the Immigration and Naturalization Service-verbatim ("And on the basis of the foregoing allegations, it is charged that you are subject to deportation, pursuant to the following provisions of law. See continuation sheet attached hereto and made part hereof."), the prosecutor asked defendant why the continuation sheet was not included with the exhibit.[6] The order to show cause was dated 1991, but defendant testified that either an immigration officer or a jail officer gave him "a voluntary deportation document" when he finished serving his time in 1984, and that person told him he was going to be taken to the border and deported.

Defendant testified that he was in fact deported in 1984, right after serving his prison sentence. At that time the immigration judge told him that he could not remain in the United States because he had committed a felony. He admitted knowing at the time he was deported that the deportation was based on his conviction. He reentered the United States illegally two or three days later because his family was here.

_____

1182(a)(2)(A)(i)(I)[1983]) and it continues to bar his admission (8 U.S.C. § 1182(a)(2)(A)(i)(I)).

[6] Defendant's answer was nonresponsive: "Because the judge, what he told me, that I had very little time with the -- that I had owned the green card, and there was no law that could make me to remain in the country and that there was a law that I had -- he had to suspend the green card and that I had to be deported. That's all he said."

Defendant accepted the plea because he did not want to go to prison for a longer term and he believed he would lose at trial. He took the plea not knowing he "was gonna have so many problems that I've had so far in my life on account of that." Had he known that immigration consequences attached to the plea, he would have sought a disposition without those consequences.

In a written order denying defendant's motion, the court found that defendant failed to establish prejudice from the presumed non-advisement[7] for two reasons. First, defendant did not move to withdraw his plea before sentencing even though an immigration agent had spoken to him and an immigration hold had been placed on him. The trial court reasoned that this failure to act was strong circumstantial evidence that "defendant would still have entered his plea of no contest to the robbery charge even if he had known about the potential negative immigration consequences at the time of the plea because defendant found out about those consequences shortly after the plea, but months before sentencing, and did not try to change the resolution of the case at that time." Second, the objective facts weighed against a finding that defendant would have rejected the plea bargain. Defendant was caught and identified almost immediately after the crime, the crime was serious, the victim was injured, and defendant faced a six-year prison term. The two-year prison cap with the possibility of probation was a very good offer, and there was no evidence that any offer other than robbery was contemplated.

The court also found the motion untimely. Defendant had failed to prove that he acted with reasonable diligence in bringing the motion because he had known about the adverse immigration consequences of the robbery conviction "for over 20 years." Apart from the fact defendant knew before sentencing in 1983 that immigration consequences

---

[7] The People conceded they could not rebut the statutory presumption that, in the absence of a record, defendant had not received the section 1016.5 immigration advisement. The People also conceded that defendant's conviction had resulted in adverse immigration consequences.

attached to his plea, the court found he was plainly aware of those consequences when he was deported in 1991[8] and illegally reentered the United States.

## II. DISCUSSION

We review the denial of a motion to vacate judgment under Penal Code section 1016.5 for abuse of discretion. (*People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192.) An abuse of discretion is found if "the court exercise[s] its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

A defendant who seeks to withdraw a plea under section 1016.5 must show at the time of the motion more than a remote possibility that the conviction has adverse immigration consequences. (§ 1016.5, subd. (b); *Zamudio*, *supra*, 23 Cal.4th at pp. 191, 203.) A defendant also must show he was prejudiced by the actual or presumed lack of advisement, and that he acted with reasonable diligence in bringing the motion. (*Id*. at pp. 192, 203.)

### A.  PREJUDICE

Defendant argues that the trial court's prejudice finding was erroneous because "prejudice is related to suffering immigration consequences as a result of the plea." Defendant's focus is incorrect. Prejudice is not gauged by the immigration consequences resulting from a plea, it is tethered to the immigration advisement and entry of the plea itself. To establish prejudice, a defendant must demonstrate a reasonable probability that he would not have entered the plea had he been properly advised. (*Zamudio*, *supra*, 23 Cal.4th at p. 210.) As recently articulated by the California Supreme Court in *People v. Martinez* (2013) 57 Cal.4th 555, the test is "what the defendant would have done, not

---

[8] It is not clear from the record whether defendant was deported in 1991. Defendant testified to being deported in 1984. He may have been deported and illegally reentered the United States a second time in 1991, or agreed to a voluntary departure at that time and never left the country.

6

whether the defendant's decision would have led to a more favorable result." (*Id.* at p. 562.) The court can consider the probable outcome of a trial when assessing whether a defendant would have rejected a plea offer. (*People v. Castro-Vasquez* (2007) 148 Cal.App.4th 1240, 1245.)

Trial court records show that defendant was under an immigration hold at the time of his 90-day evaluation by the Department of Corrections pending sentencing, and that an immigration official had spoken to him during that evaluation period. It was reasonable for the court to infer from those records that defendant had knowledge when he was sentenced that his plea carried immigration consequences. It was also reasonable for the court to infer from defendant's failure to protest the entry of his plea at the most obvious time-before he was sentenced-that he would not have rejected the plea based on a section 1016.5 advisement.

Further, the trial court acted reasonably by considering the strength of the prosecution's case, the attractiveness of the prosecution's offer, and the fact that no other offers were contemplated. In light of the record, including defendant's forthright acknowledgment of guilt and his expressed remorse in 1983, and his admitted desire to spend as little time in prison as possible, we find no abuse of discretion in the court's finding that defendant failed to demonstrate prejudice.

## B.    TIMELINESS

Defendant argues that he was diligent in filing the motion to vacate four months after he contacted an immigration attorney and "learn[ed] for the first time that the failure to be adequately warned of possible immigration consequences of his plea caused him, is causing him, and will cause him harm[.]" He notes that section 1016.5 contains no time limit, and *Zamudio* found a motion to be timely brought six years after a plea in that case was entered.

The defendant in *Zamudio* learned of the potential consequences of his 1992 plea in 1997 when an immigration hold was placed on him, and he brought his motion to

7

vacate in 1998 before he was deported. (*Zamudio*, *supra*, 23 Cal.4th at pp. 190, 204.) In stark contrast, defendant had spoken to an immigration officer and was under an immigration hold in 1983 before he was sentenced. Defendant testified to being deported in 1984 after serving his sentence in this case, and to reentering the United States illegally within days of that deportation. Thus, the consequences of defendant's plea bore out in 1984, some 30 years before his motion to vacate. We find no abuse of discretion on this record.[9]

## III. DISPOSITION

The trial court's order is affirmed.

---

[9] Our conclusion would be the same if defendant had been deported and reentered the country in 1991 instead of or in addition to 1984.

_____

Grover, J.

**WE CONCUR:**

_____

Rushing, P.J.

_____

Márquez, J.